* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Donovan, with modifications.
 * * * * * * * * * * * RULING ON MOTION TO AMEND THE RECORD
The defendants have moved the Full Commission to amend the October 11, 2001 medical record of Dr. Warren B. Burrows, as contained in the transcript of evidence. The parties have agreed that the record contains a copying error by which words on the right side of the record were mistakenly cut off, thus, altering the meaning of the document. The defendants have submitted the correct version of said record. For good cause shown, the Full Commission hereby GRANTS the defendants' motion to amend the October 11, 2001 medical record of Dr. Warren B. Burrows, as contained in the transcript of evidence, and substitutes the correct version as submitted by the defendants.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. The Industrial Commission forms filed in this case are admissible without further authentication. These include the plaintiff's 18, 21 and 33, and the defendants' 33, 33R and 60.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The issues for determination are:
 a. Whether plaintiff has suffered a change of condition under N.C. Gen. Stat. § 97-47, to-wit: defendants laid him off from his restricted duty job and after a period of temporary total disability, he returned to work earning less than his pre-injury wages;
 b. Whether plaintiff is entitled to additional indemnity payments under N.C. Gen. Stat. § 97-30 due to his loss of earning capacity, or increased disability under N.C. Gen. Stat. § 97-31;
 c. Whether defendants are entitled to reimbursement of vocational rehabilitation expenses incurred during the time period plaintiff had returned to work but had not informed defendants of his return to work;
 d. Whether defendants are entitled to a set off in an amount equal to the resignation package paid to plaintiff when he left their employ.
5. The parties stipulated the following documentary evidence:
a. Stipulated Exhibit #1: Pretrial Agreement;
b. Stipulated Exhibit #2: Medical records;
c. Stipulated Exhibit #3: Personnel records; and,
d. Stipulated Exhibit #4: I.C. Forms.
8. In addition to Stipulated Exhibit(s), the following Exhibits were admitted into evidence:
a. Plaintiff's Exhibit #1: Check;
b. Plaintiff's Exhibit #2: Termination letter;
c. Plaintiff's Exhibit #3: File from Homanit, USA;
d. Plaintiff's Exhibit #4: W-2, 2002;
e. Plaintiff's Exhibit #5: W-2, 2003;
f. Plaintiff's Exhibit #6: Benefits statement;
g. Plaintiff's Exhibit #7: Job description;
h. Plaintiff's Exhibit #8: Pay stub;
 i. Plaintiff's Exhibit #9: W-2 and unemployment statement;
j. Defendants' Exhibit #1: Rehabilitation notes; and,
 k. Defendants' Exhibit #2: Rehabilitation services invoice.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was fifty-five years old and had completed the seventh grade. The plaintiff began his employment with the defendant-employer in 1990 and held different jobs in the tire-building area.
2. On July 10, 2000, the plaintiff suffered an onset of bilateral carpal tunnel syndrome. The defendants accepted liability for the plaintiff's claim pursuant to a Form 60 and began paying benefits based upon an average weekly wage of $712.00, yielding a weekly compensation rate of $474.76.
3. The plaintiff's carpal tunnel syndrome was treated by Dr. Warren Burrows. The plaintiff underwent bilateral carpal tunnel releases in October 2000.
4. On January 18, 2001, Dr. Burrows released the plaintiff from treatment and imposed permanent restrictions of no lifting over 20-25 pounds with each hand, no forceful pinching or gripping activities, and no use of vibratory or impact tools. Dr. Burrows assigned a five percent (5%) permanent partial impairment rating to each of the plaintiff's hands.
5. The plaintiff returned to work at his pre-injury wages on February 23, 2001, primarily as a tire painter. On April 11, 2001, the parties entered into a Form 21 Agreement by which the defendants agreed to pay the plaintiff for the permanent partial disability ratings to his hands. The Agreement was approved by the Commission on July 13, 2001. The plaintiff received payment in the amount of $9,495.20 pursuant to the Form 21 on September 14, 2001.
6. The tire painting job required the plaintiff to lift tires weighing up to 50 pounds, approximately four times each. The plaintiff processed 300 to 400 tires per day. As a result, the plaintiff returned to Dr. Burrows on August 27, 2001, with complaints of numbness in his fingers and pain in his wrists. Dr. Burrows' examination demonstrated "some evidence of median nerve irritation." Dr. Burrows diagnosed the plaintiff with a worsening of his condition, fitted him with new splints, and recommended that his lifting restriction be lowered to 20 pounds.
7. The plaintiff returned to work on light duty. He presented to Dr. Burrows on September 17, 2001, showing improvement since his return to lighter work, although he still experienced numbness in his left hand and some soreness in his right hand. Dr. Burrows recommended an additional functional capacity evaluation (FCE) and that the plaintiff remain on light duty until the study was completed.
8. On October 1, 2001, Dr. Burrows reviewed the results of the FCE and recommended the following lifting restrictions: 21 to 50 pounds occasionally, 11 to 25 pounds frequently, and 1-10 pounds constantly. For carrying, the restrictions were 51 to 100 pounds occasionally, 26 to 50 pounds frequently, and 11 to 20 pounds constantly. Dr. Burrows noted that the plaintiff needed an additional rating to his hands beyond that which had already been imposed. Dr. Burrows forwarded the new restrictions to the defendant-employer.
9. The plaintiff returned to work for approximately one week at a light duty position of splicing bands. He was sent home due to a lack of work and eventually the defendant-employer informed the plaintiff of a voluntary resignation program wherein he would be paid $13,112.80 to voluntarily resign from employment with the defendant-employer. The plaintiff executed the voluntary resignation, which provided that his last day of work was November 9, 2001. The record indicates that this program was available to a number of employees, regardless of their disability status. There is no indication that this payment was in any manner related to any compensation the plaintiff may have been due under the North Carolina Workers' Compensation Act.
10. Upon the plaintiff's leaving the defendant-employer's employ, the defendant-employer voluntarily resumed the plaintiff's temporary total disability compensation. The Full Commission finds that in so doing, the defendants have admitted that the plaintiff suffered from a change in condition and that they were obligated under the Act to reinstate benefits.
11. Following the plaintiff's resignation, the defendants provided the plaintiff with the vocational services of Nancy Stewart. On March 28, 2002, Ms. Stewart met with the plaintiff for the first and only time. Ms. Stewart's records note that, following their meeting, she made a number of telephone calls regarding the plaintiff and did some internet research. The next contact she had with the plaintiff was a letter she sent to him on May 8, 2002.
12. On May 13, 2002, without the assistance of Ms. Stewart, the plaintiff obtained employment at Homanit, USA. The plaintiff's position was driving a forklift and required that he complete a training course prior to beginning his duties. The plaintiff trained for approximately two weeks, worked for approximately one week, then went out of work for an operation unrelated to his compensable injury. The plaintiff was paid during his training and his period of work.
13. Between May 12 and 20, 2002, Ms. Stewart attempted to contact the plaintiff by telephone and letter, but received no response. On May 20, 2002, Ms. Stewart received a phone message from the plaintiff's wife, stating that the plaintiff was undergoing minor surgery and would be unable to attend GED classes for approximately one month.
14. Following the plaintiff's recovery from surgery, he returned to Homanit, USA, and continued working, earning $8.84 per hour. On August 11, 2002, his pay rate increased to $8.98 per hour, and on November 27, 2002, it increased to $9.26 per hour. While at Homanit, USA, the plaintiff also earned significant overtime pay.
15. Ms. Stewart next wrote to the plaintiff on June 28, 2002, inquiring about setting up another appointment. On July 28, 2002, Ms. Stewart made her next attempt to contact the plaintiff but was unsuccessful. On August 6, 2002, Ms. Stewart was informed by the defendant-carrier's claims representative that the plaintiff might be working. Ms. Stewart confirmed the plaintiff's employment with Homanit, USA, on the same day.
16. The plaintiff continued to receive temporary total disability benefits in the weekly amount of $474.76 until August 6, 2002. These payments were not due and payable following the plaintiff's return to work on May 7, 2002.
17. Ms. Stewart testified that she worked with the plaintiff during the period after he took his resignation agreement and was receiving temporary total disability benefits. It is clear from the record, which includes the time sheets of Ms. Stewart, that she engaged in legitimate job activities on behalf of the plaintiff. The Full Commission finds that the plaintiff offered no legitimate reason or excuse for failing to inform Ms. Stewart that he had returned to work. Thus, the Full Commission finds that the defendants are entitled to a credit for the vocational rehabilitation services rendered by Ms. Stewart during the period in which the plaintiff was employed.
18. Following the defendants' filing of a Form 33 requesting a hearing on the issue of the plaintiff's fraudulent acceptance of compensation, and pursuant to an Order of the Commission, the issue was mediated and the plaintiff agreed to reimburse defendants at the rate of no less than $75.00 per month, beginning in November 2003.
19. On March 13, 2003, the plaintiff was terminated by Homanit, USA, for excessive unexcused absences. The plaintiff's termination was not related to his compensable injury and was for reasons a non-disabled employee would have been terminated. During his employment with Homanit, USA, the plaintiff earned a total of $20,073.50. He worked for Homanit, USA, for approximately 43 weeks, less the three weeks he was out of work during the summer of 2002, leaving a total of 40 weeks. Because the plaintiff did not work for a full year prior to his termination, determining his average weekly wage using the preferred method would not achieve just results. Determining the average weekly wage by taking the plaintiff's total income and dividing it by 40 weeks would provide a result which is fair and just to all parties. Therefore, the Full Commission finds that the plaintiff's average weekly wage for his employment with Homanit, USA, is determined to be $501.83.
20. The plaintiff continued to seek employment and on September 8, 2003, found work with the City of Albemarle as a water tester at a treatment plant. The plaintiff remains employed by the City of Albemarle; however, he is currently "laid off," pending his passing of an algebra test. The plaintiff currently earns $10.21 per hour for an average weekly wage of $408.40. If he passes the test, he will return to work at a higher wage.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The plaintiff sustained a compensable bilateral carpal tunnel injury arising out of and in the course of the employment on July 10, 2000. The defendants accepted the plaintiff's claim and he was paid temporary total disability compensation pursuant to the Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6).
2. A Form 21 Agreement was entered into by the parties and was approved by the Commission on July 13, 2001. The plaintiff was paid permanent partial disability compensation in accordance with the ratings he received for his hands. N.C. Gen. Stat. §97-53(18).
3. Following the plaintiff's return to work, he suffered a change in condition that increased his symptoms and impacted his earning capacity and his degree of disability. The plaintiff's change in condition is evidenced by the opinion of Dr. Burrows (that the plaintiff's permanent partial disability rating required adjustment, and the plaintiff's restrictions were changed), and by the defendants' voluntarily reinstatement of the plaintiff's temporary total disability payments. Upon receipt of the plaintiff's new restrictions, the defendant-employer could no longer provide him with work, impacting his earning capacity. N.C. Gen. Stat. § 97-47.
4. When the plaintiff returned to work at Homanit, USA, his earnings were less than his pre-injury wages, entitling him to two-thirds of the difference between his pre-injury wages of $712.00 and his current wages of $501.83 for the period from May 13, 2002, through March 13, 2003. N.C. Gen. Stat. § 97-30.
5. The plaintiff's termination from his employment with Homanit, USA, for excessive unexcused absences constitutes a constructive refusal of employment. The Court of Appeals inSeagraves v. Austin Co. of Greensboro, 123 N.C. App. 228,472 S.E.2d 397 (1996), stated that in order to bar payment of benefits, an employer must demonstrate that: (1) the employee was terminated for misconduct; (2) the same misconduct would have resulted in the termination of a nondisabled employee; and (3) the termination was unrelated to the employee's compensable injury. Id. An employer's successful demonstration of such evidence is "deemed to constitute a constructive refusal" by the employee to perform suitable work, a circumstance that operates to bar benefits for lost earnings. Id. Accordingly, the plaintiff is not eligible for temporary total or temporary partial disability compensation for the period he was without employment following the termination from Homanit, USA.
6. Upon the plaintiff's employment with the City of Albemarle on September 8, 2003, he again became entitled to temporary partial disability compensation in an amount equal to two-thirds of the difference between his average weekly wage of $712.00 and his earnings with the City of Albemarle of $408.40 for the remaining portion of the three hundred weeks from the date of injury, July 10, 2000. This amount is subject to change should the plaintiff's earnings increase during the payment period. N.C. Gen. Stat. § 97-30.
7. The defendants are not entitled to reimbursement for the amount paid to the plaintiff for his voluntary retirement. Said payment constitutes a contract between the parties separate and apart from his workers' compensation injury as evidenced by its availability to non-injured employees. The defendants are entitled to a credit only when payments are made "which by the terms of this Article were not due and payable when made." N.C. Gen. Stat. § 97-42. The retirement package constitutes a payment which was not made under the terms of the Act, therefore, N.C. Gen. Stat. § 97-42 does not apply.
8. The defendants are entitled to recover the vocational costs rendered by Nancy Stewart during the period in which the plaintiff was working for another employer and did not reveal the same to Ms. Stewart of the defendants. N.C. Gen. Stat. § 97-25.
9. Because the plaintiff has shown a change of condition and is entitled to benefits under N.C. Gen. Stat. § 97-30, the defendants are entitled to a credit for the permanent partial disability benefits previously paid to plaintiff under N.C. Gen. Stat. § 97-31. See Collins v. Speedway Motor Corp., et al.,165 N.C. App. 113, 598 S.E.2d 185 (2004).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, the defendants shall pay temporary partial disability compensation to the plaintiff at a rate of two thirds of the difference between his pre-injury wages and the wages earned at Homanit, USA, from May 13, 2002, through March 13, 2003, and at the City of Albermarle from September 8, 2003, and continuing through the remainder of a total of 300 weeks beginning on July 10, 2000, or until the plaintiff begins earning wages equal to or greater than his pre-injury wage. The portion of such compensation that has accrued shall be paid in a lump sum.
2. The defendants shall pay to the plaintiff's counsel a reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to the plaintiff herein, which shall be deducted from the lump sum due the plaintiff; thereafter, every fourth payment of compensation due the plaintiff shall be made directly to the plaintiff's counsel.
3. The defendants shall receive a credit for the vocational costs rendered by Nancy Stewart during the period in which the plaintiff was working for another employer and did not reveal the same to Ms. Stewart of the defendants.
4. Because the plaintiff has shown a change of condition and is entitled to benefits under N.C. Gen. Stat. § 97-30, the defendants shall receive a credit for the permanent partial disability benefits previously paid to plaintiff under N.C. Gen. Stat. § 97-31.
5. The defendants shall pay the costs.
This 17th day of January 2006.
 S/__________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/________________ THOMAS J. BOLCH COMMISSIONER
 S/_________________ BUCK LATTIMORE CHAIRMAN