MICKEY S. COLLINS, EMPLOYEE, PLAINTIFF v. SPEEDWAY MOTOR SPORTS CORP., EMPLOYER, AND ROYAL AND SUNALLIANCE, CARRIER, DEFENDANTS

No. COA03-853

(Filed 6 July 2004)

**Workers' Compensation— maximum medical improvement— healing period—maximum vocational recovery**

    The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff employee reached maximum medical improvement (MMI) on 25 January 1999 and that plaintiff employee's entitlement to combined benefits under N.C.G.S. §§ 97-29 and 97-30 was greater than his entitlement to benefits under N.C.G.S. § 97-31, because: (1) MMI, which is equivalent to a finding that the healing period as defined under N.C.G.S. § 97-31 has ended, does not require the employee to have reached maximum vocational recovery; (2) the evidence is uncontroverted that plaintiff's fracture was completely healed as of 25 January 1999 and that it was the doctor's professional opinion that plaintiff's physical injury had reached MMI as of the date his fracture became healed; and (3) plaintiff's need for vocational rehabilitation services in this case further supports, rather than contradicts, the competent evidence establishing that plaintiff reached MMI as of 25 January 1999.

Appeal by plaintiff from order entered 28 March 2003 by the Full Commission of the North Carolina Industrial Commission. Heard in the Court of Appeals 26 April 2004.

    *Cox, Gage & Sasser, by Charles McB. Sasser, for plaintiff-appellant.*

    *McAngus, Goudelock & Courie, P.L.L.C., by Andrew R. Ussery and Robert B. Starnes, for defendants-appellees.*

COLLINS v. SPEEDWAY MOTOR SPORTS CORP.

[165 N.C. App. 113 (2004)]

MARTIN, Chief Judge.

Plaintiff appeals from an order of the North Carolina Industrial Commission awarding him compensation, pursuant to N.C. Gen. Stat. §§ 97-29 and 97-30, for temporary total disability from 13 August 1997 until 6 February 2000, and temporary partial disability from 6 February 2000 until 1 April 2000.

The record discloses that on 12 August 1997, plaintiff received injuries to his right leg arising out of and in the course and scope of his employment as a ground maintenance worker with defendant-employer. On 3 September 1997, defendant-carrier admitted liability for plaintiff's injuries and executed a Form 21 agreement with plaintiff, agreeing to pay temporary total disability benefits.

As a result of the injury, plaintiff was admitted to University Hospital where x-rays revealed comminuted transverse fractures of the distal third of the tibia and fibula. Plaintiff immediately underwent closed reduction surgery and splinting of the tibia and fibula fractures. On 14 August 1997, an additional surgery was performed by Dr. Matthew David Ohl. At a follow-up examination on 17 October 1997, Dr. Ohl found a lack of mobility and dorsiflexion of plaintiff's foot. Plaintiff subsequently moved to Ohio, where he was examined by Dr. Kee P. Wong on 4 December 1997 for ongoing right leg pain. Dr. Wong diagnosed plaintiff with a peroneal nerve injury and a delayed union of the left tibia fracture.

Plaintiff underwent ongoing treatment with Dr. Wong and on 21 February 1998, Dr. Wong found that plaintiff's surgical wounds had healed. At a follow-up visit on 5 March 1998, plaintiff reported to Dr. Wong that he was no longer experiencing pain in his right leg. On 14 April 1998, further x-rays revealed proper healing of the right leg with a disappearing fracture line. However, plaintiff still continued to have very little ankle motion and minimal dorsiflexion. Dr. Wong recommended stretching exercises and plaintiff returned to see Dr. Wong for follow-up visits on 28 May and 28 July 1998. On 4 September 1998, Dr. Wong filled out documents sent by Concerta Managed Care concerning vocational rehabilitation and work restrictions. On 25 January 1999, Dr. Wong conducted another follow-up examination of plaintiff's right leg. Dr. Wong informed plaintiff that if the fracture in his leg was healed, then it was his opinion that plaintiff had reached maximum medical improvement. The following day, x-rays confirmed that the fracture in plaintiff's right leg was healed. Dr. Wong recommended that plaintiff undergo vocational rehabilitation in order to

COLLINS v. SPEEDWAY MOTOR SPORTS CORP.

[165 N.C. App. 113 (2004)]

learn to work with the limitations in his leg and released plaintiff to return to work with the restrictions that he not engage in repetitive lifting, lifting over 30 pounds, standing for more than 4 hours, or sitting for more than 8 hours. On 17 June 1999, Dr. Wong assigned a 24% disability rating to plaintiff's right foot.

With the assistance of vocational rehabilitation professionals, plaintiff attempted to find work within his restrictions in both Ohio and North Carolina, but was unsuccessful. On 15 October 1999, plaintiff returned to Dr. Ohl, who found that plaintiff had a healed fracture with continuing peroneal nerve palsy, a permanent peroneal nerve lesion to the foot and ankle, and a lack of motion and dorsiflexion. Dr. Ohl assigned a 35% disability rating to plaintiff's right foot.

On 6 February 2000, plaintiff found work at an Ohio plastics plant for wages significantly less than his pre-injury wages. On 1 April 2000, plaintiff returned to North Carolina to work for an auto detailing shop at wages comparable to his pre-injury wages.

Defendant-employer continued to pay temporary total disability benefits until plaintiff returned to work on 6 February 2000. On 17 April 2000 plaintiff filed a Form 33 hearing request with the Industrial Commission for defendant's refusal to pay additional disability benefits. Defendants responded that plaintiff was not entitled to benefits after his return to work. The matter was heard by a deputy commissioner, who entered an opinion and award on 18 September 2001 ordering, *inter alia*, that in addition to the payment of temporary total disability, pursuant to G.S. § 97-29, through 6 February 2000, plaintiff was eligible to receive benefits for permanent partial disability for an additional 50.4 weeks, pursuant to G.S. § 97-31, based on a 35% disability to his right foot.

Defendant appealed the deputy commissioner's order to the Full Commission. On 28 March 2003, the Full Commission entered its opinion and award in which it found facts as summarized above and concluded, *inter alia*, that while plaintiff was entitled to compensation, he had reached maximum medical improvement on 25 January 1999, not 6 February 2000, and thus, plaintiff's more munificent remedy was pursuant to G.S. §§ 97-29 and 97-30, not G.S. § 97-31. Plaintiff appeals from the opinion and award of the Full Commission.

---

Plaintiff first argues the Industrial Commission erred in law and in fact when it concluded that he reached maximum medical improvement on 25 January 1999. Such error, plaintiff argues further, caused

COLLINS v. SPEEDWAY MOTOR SPORTS CORP.

[165 N.C. App. 113 (2004)]

the Commission to also erroneously conclude that his entitlement to combined benefits under G.S. §§ 97-29 and 97-30 was greater than his entitlement to benefits under G.S. § 97-31. We have carefully considered his contentions and affirm the Commission's opinion and award.

"In reviewing an opinion and award from the Industrial Commission, the appellate courts are bound by the Commission's findings of fact when supported by any competent evidence; but the Commissions's legal conclusions are fully reviewable." *Lanning v. Fieldcrest-Cannon, Inc.*, 352 N.C. 98, 106, 530 S.E.2d 54, 60 (2000).

Plaintiff first argues the Commission erred in either law or fact when it determined that plaintiff reached maximum medical improvement (MMI) on 25 January 1999. Although the Commission erroneously labeled such determination as a conclusion of law, the question of whether an employee has reached "maximum medical improvement" or "MMI" is an issue of fact. *See, e.g., Aderholt v. A.M. Castle Co.*, 137 N.C. App. 718, 722, 529 S.E.2d 474, 477, *cert. denied*, 352 N.C. 356, 544 S.E.2d 546 (2000); *Davis v. Embree-Reed, Inc.*, 135 N.C. App. 80, 85, 519 S.E.2d 763, 766, *disc. review denied*, 351 N.C. 102, 541 S.E.2d 143 (1999); *Carpenter v. Industrial Piping Co.*, 73 N.C. App. 309, 312, 326 S.E.2d 328, 330 (1985). Thus, the applicable standard of review is whether there is competent evidence in the record to support the Commission's finding that plaintiff had reached MMI on 25 January 1999.

In this case, plaintiff argues that Dr. Wong's opinion was not competent to support the Commission's finding that plaintiff reached MMI on 25 January 1999. On 25 January 1999, Dr. Wong stated the following after evaluating plaintiff:

> I explained to the patient that basically he has reached maximal medical improvement if the fracture is healed. I explained to him I think he should undergo some type of vocational rehab since he is not working now. We will see the patient tomorrow for x-ray.

The next day, plaintiff underwent x-rays of his right leg, which showed that his tibial fracture was completely healed. Dr. Wong made the following entry in his notes:

> I explained to the patient that his tibia fracture is healed. I explained to him that he is maximally medically improved now. At this point he states he can stand for four hours, sit for eight hours, and carry 30 lbs. He cannot do any repetitive lifting. At this point I would recommend the patient undergo vocational rehabil-

itation. I explained to him that he could learn to work with these types of limitations. We will see the patient again only as needed.

On 2 February 1999, in response to a letter forwarded to him by Concentra Managed Care, Dr. Wong made an affirmative response to the following question:

> Has the [plaintiff] reached a level of Maximum Medical Improvement for his allowed condition of RIGHT CLOSED TIBIA/FIBULA FRACTURE as defined by the Bureau of Worker's [sic] Compensation:
>
> 'A treatment plateau (static or well-stabilized) in which no fundamental, functional or physiological change can be anticipated within reasonable probability despite further medical or rehabilitative procedures. A claimant may need supportive care to maintain this level of function.'

Based on this evidence, the Commission found that plaintiff had reached MMI on 25 January 1999.

Plaintiff argues that the fact that plaintiff's fracture had completely healed as of 25 January 1999 does not establish MMI, since Dr. Wong recommended that plaintiff undergo vocational rehabilitation. Plaintiff cites language used by this Court in *Walker v. Lake Rim Lawn & Garden*, 155 N.C. App. 709, 575 S.E.2d 764, *disc. review denied*, 357 N.C. 67, 579 S.E.2d 577 (2003), stating that an injured worker's healing period cannot be considered to have come to an end "until he has reached maximum vocational recovery." *Id.* at 718, 575 S.E.2d at 770.

In *Walker*, defendants argued that an award of continuing temporary total disability pursuant to G.S. § 97-29 should be reversed. *Id.* at 717, 575 S.E.2d at 769. To support this argument, defendants assigned error to a Commission finding which stated, "plaintiff has not reached maximum medical improvement or the end of the healing period . . . [since he] is in need of and would benefit from both chronic pain treatment and a vocational rehabilitation program." *Id.* at 717-18, 575 S.E.2d at 769-70. They contended that a finding of MMI would have barred the Commission from awarding to plaintiff continuing temporary total disability benefits pursuant to G.S. § 97-29. *Id.* This Court rejected the assignment of error, holding the Commission finding was immaterial to the determination of whether plaintiff was entitled to temporary total disability benefits pursuant to G.S. § 97-29. *Id.* at 717-18, 575 S.E.2d at 769. The Court went on to say:

In addition, the evidence does support that part of the Commission's finding Number 34, that 'plaintiff has not reached maximum medical improvement or the end of the healing period . . . [since he] is in need of and would benefit from both chronic pain treatment and a vocational rehabilitation program.' Both pain treatment and vocational services are considered medical compensation as defined in N.C. Gen. Stat. § 97-2(19), and are designed to 'give relief and . . . to lessen the period of disability . . . .' N.C. Gen. Stat. § 97-2(19) (2001). Therefore, until he has reached maximum vocational recovery, this plaintiff's healing period is not yet at an end. Thus, this argument is without merit.

*Id.* at 718, 575 S.E.2d at 770.

We first note that "maximum medical improvement, by definition, means that the employee's healing period has ended." *Knight v. Wal-Mart Stores, Inc.*, 149 N.C. App. 1, 14 n.4, 562 S.E.2d 434, 443 n.4 (2002), *aff'd*, 357 N.C. 44, 577 S.E.2d 620 (2003) (internal quotation omitted). Thus, the *Walker* court seems to equate an injured worker's attainment of MMI with the point he or she reaches "maximum vocational recovery." *Walker*, 155 N.C. App. at 718, 575 S.E.2d at 770. After careful review, we decline to follow this language as it was unnecessary to the resolution of its case and is contrary to the previous decisions of our courts.

"The underlying purpose of our Work[ers'] Compensation Act, G.S. Chap. 97, is to provide compensation for work[ers] who suffer disability by accident arising out of and in the course of their employment." *Henry v. A. C. Lawrence Leather Co.*, 234 N.C. 126, 127, 66 S.E.2d 693, 694 (1951). An award under the Act has two distinct components: (1) payment of "medical compensation" pursuant to G.S. § 97-25 for expenses incurred as a direct result of the work-related injury, and (2) payment of general "compensation" pursuant to G.S. §§ 97-29 through 97-31 for financial loss suffered as a direct result of the work-related injury. *Hyler v. GTE Prods. Co.*, 333 N.C. 258, 267, 425 S.E.2d 698, 704 (1993). N.C. Gen. Stat. § 97-2(19) (2003) broadly defines the term "medical compensation" as follows:

The term 'medical compensation' means medical, surgical, hospital, nursing, and rehabilitative services, and medicines, sick travel, and other treatment, including medical and surgical supplies, as may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the

COLLINS v. SPEEDWAY MOTOR SPORTS CORP.

[165 N.C. App. 113 (2004)]

Commission, will tend to lessen the period of disability; and any original artificial members as may reasonably be necessary at the end of the healing period and the replacement of such artificial members when reasonably necessitated by ordinary use or medical circumstances.

"[T]he relief obtainable as general 'compensation' is different and is separate and apart from the medical expenses recoverable under the Act's definition of 'medical compensation.' " *Hyler*, 333 N.C. at 265, 425 S.E.2d at 703. When pursuing a general "compensation" award, "[a]n employee . . . has, at the outset, two very general options." *Knight*, 149 N.C. App. at 10, 562 S.E.2d at 441. An employee may seek compensation by showing a disability pursuant to G.S. §§ 97-29 or 97-30. *Id.* "[D]isability is defined by a diminished capacity to earn wages, not by physical infirmity." *Saums v. Raleigh Community Hospital*, 346 N.C. 760, 764, 487 S.E.2d 746, 750 (1997). Alternatively, an employee may seek compensation by showing a specific physical impairment pursuant to G.S. § 97-31. *Knight*, 149 N.C. App. at 10, 562 S.E.2d at 442. Where an employee can show *both* a disability pursuant to G.S. §§ 97-29 or 97-30 and a specific physical impairment pursuant to G.S. § 97-31, he may not collect benefits pursuant to both schemes, but rather is entitled to select the statutory compensation scheme which provides the more favorable remedy. *Whitley v. Columbia Lumber Mfg. Co.*, 318 N.C. 89, 95-96, 348 S.E.2d 336, 340 (1986).

Under N.C. Gen. Stat. §§ 97-29 and 97-30, an injured employee who suffers a loss of wage-earning capacity is generally entitled to collect compensation for as long as he or she remains disabled. *See* N.C. Gen. Stat. §§ 97-29 and 97-30 (2003) (may only collect partial disability for a maximum of 300 weeks). "[D]isability [and hence, compensation] ends when the employee returns to work at the same wages he was receiving at the time of the injury." *Hoyle v. Carolina Associated Mills*, 122 N.C. App. 462, 464, 470 S.E.2d 357, 358 (1996).

Under N.C. Gen. Stat. § 97-31, an injured employee who suffers some degree of permanent function loss to a part of the body as enumerated in the statute is entitled to collect (1) compensation under N.C. Gen. Stat. §§ 97-29 or 97-30 for temporary disability, if any, occurring during the period his physical injury is healing; and (2) permanent disability compensation "for an additional, statutorily prescribed period of time . . . which begins when the healing period ends . . . ."

COLLINS v. SPEEDWAY MOTOR SPORTS CORP.

[165 N.C. App. 113 (2004)]

*Knight,* 149 N.C. App. at 11, 562 S.E.2d at 442; *see also* N.C. Gen. Stat. § 97-31 (2003).

"[T]he healing period in N.C. Gen. Stat. § 97-31 ends at the point when the injury has stabilized, referred to as the point of 'maximum medical improvement'. . . ." *Knight,* 149 N.C. App. at 12, 562 S.E.2d at 442-43. In *Crawley v. Southern Devices, Inc.,* 31 N.C. App. 284, 229 S.E.2d 325 (1976), *cert. denied,* 292 N.C. 467, 234 S.E.2d 2 (1977), this Court stated:

> The healing period, within the meaning of G.S. 97-31, is the time when the claimant is unable to work because of his injury, is submitting to treatment, which may include an operation or operations, or is convalescing. This period of temporary total disability contemplates that eventually there will be either complete recovery, or an impaired bodily condition which is stabilized. When the claimant has an operation to correct or improve the impairment resulting from his injury, the healing period continues after recovery from the operation until he reaches maximum recovery. The healing period continues until, after a course of treatment and observation, the injury is discovered to be permanent and that fact is duly established.

*Id.* at 288-89, 229 S.E.2d at 328-29 (citations omitted).

"[A] finding of maximum medical improvement is not the equivalent of a finding that the employee is able to earn the same wage earned prior to injury." *Russos v. Wheaton Indus.,* 145 N.C. App. 164, 167, 551 S.E.2d 456, 459 (2001), *disc. review denied,* 355 N.C. 214, 560 S.E.2d 135 (2002) (internal quotation omitted). Rather "the primary significance of the concept of MMI is to delineate a crucial point in time *only within the context of a claim for scheduled benefits under N.C. Gen. Stat. § 97-31,* and . . . does not have any direct bearing upon an employee's right to continue to receive temporary disability benefits once the employee has established a loss of wage-earning capacity pursuant to N.C. Gen. Stat. § 97-29 or § 97-30." *Knight,* 149 N.C. App. at 13-14, 562 S.E.2d at 443 (emphasis original). Whereas MMI is "a purely medical determination" which "occurs when the employee's physical recovery has reached its peak," *Walker,* 155 N.C. App. at 717, 575 S.E.2d at 769, "the term 'disability' is not simply a medical question, but includes an assessment of other vocational factors, including age, education, and training," *Russos,* 145 N.C. App. at 168, 551 S.E.2d at 459.

COLLINS v. SPEEDWAY MOTOR SPORTS CORP.

[165 N.C. App. 113 (2004)]

It is within this statutory framework that we determine whether a finding of MMI, which is equivalent to a finding that the healing period as defined under G.S. § 97-31 has ended, requires the employee to have reached "maximum vocational recovery." *Walker*, 155 N.C. App. at 718, 575 S.E.2d at 770. Without defining the terms, the Act distinguishes between "medical rehabilitation services" and "vocational rehabilitation services," which are both compensable within an award for "medical compensation" pursuant to G.S. § 97-25. *See* N.C. Gen. Stat. §§ 97-25.4 and 97-25.5 (2003) (providing for the adoption, by the Commission, of utilization rules and guidelines for "medical care and medical rehabilitation services" and for "vocational rehabilitation services and other types of rehabilitation services").

Under its "Rules for Utilization of Rehabilitation Professionals in Workers' Compensation Claims," the Industrial Commission provides the following definitions:

E. "Vocational Rehabilitation" refers to the delivery and co-ordination of services under an individualized plan, ***with the goal of assisting injured workers to return to suitable employment.***

(1) Specific vocational rehabilitation services may include, but are not limited to: vocational assessment, vocational exploration, counseling, job analysis, job modification, job development and placement, labor market survey, vocational or psychometric testing, analysis of transferable skills, work adjustment counseling, job-seeking skills training, on-the-job training and retraining, and follow-up after re-employment.

(2) The vocational assessment is based on the RP's evaluation of the worker's social, medical, and vocational standing, along with other information significant to employment potential and on a face-to-face interview between the worker and the RP, to determine whether the worker can benefit from vocational rehabilitation services, and, if so, to identify the specific type and sequence of appropriate services. It should include an evaluation of the worker's expectations in the rehabilitation process, an evaluation of any specific requests by the worker for medical treatment or vocational training, and a statement of the RP's conclusion regarding the worker's need for rehabilitation services, benefits expected from services, and a description of the proposed rehabilitation plan.

(3) Job placement activities may be commenced after completion of a vocational assessment and formulation of an individualized plan for vocational services which specifies its goals and the priority for return-to-work options in each case. Placement shall only be directed toward prospective employers offering the opportunity for suitable employment, as defined herein.

. . .

G. "Suitable employment" means employment in the local labor market or self-employment which is reasonably attainable and *which offers an opportunity to restore the worker as soon as possible and as nearly as practicable to pre-injury wage,* while giving due consideration to the worker's qualifications (age, education, work experience, physical and mental capacities), impairment, vocational interests, and aptitudes. No one factor shall be considered solely in determining suitable employment.

N.C. Indus. Comm'n Rules for Rehabilitation Professionals III(E) & (G), 2004 Ann. R. (N.C.) 1017, 1018-19 (emphases added).

These rules make clear that "vocational rehabilitation" under the Act refers to services geared toward assisting injured workers to return "as soon as possible and as nearly as practicable" to employment offering pre-injury wages. *Id.* Thus, in order for an injured worker to achieve "maximum vocational recovery," *see Walker,* 155 N.C. App. at 718, 575 S.E.2d at 770, the injured worker must come to a point, after utilizing all vocational resources, where his or her maximum ability to earn pre-injury wages has been reached. Such a concept extends well beyond the scope of physical recovery and stabilization that is characterized as MMI. *See Russos,* 145 N.C. App. at 167-68, 551 S.E.2d at 459; *Knight,* 149 N.C. App. at 14, 562 S.E.2d at 443-44. We, accordingly, decline to adopt the *obitur dictum* contained in *Walker,* and hold that a finding of MMI, which is equivalent to a finding that the healing period as defined under G.S. § 97-31 has ended, does not require the injured worker to have reached "maximum vocational recovery." *See State v. Pearson,* 348 N.C. 272, 277, 498 S.E.2d 599, 601 (1998) (language which is not necessary to the resolution of a case is dictum and does not constitute binding precedent). Defendant's assignment of error to the contrary is overruled.

We next turn to the question of whether there is competent evidence in the record to support the Commission's finding that plaintiff reached MMI on 25 January 1999. The evidence is uncontro-

verted that plaintiff's fracture was completely healed as of 25 January 1999 and that it was Dr. Wong's professional opinion that plaintiff's physical injury had reached MMI as of the date his fracture became healed. Plaintiff points to evidence showing that at the time of the Commission's order, he was still experiencing problems with his injured leg and he was still in need of vocational rehabilitation services. A close examination of the entire record reveals that plaintiff's need for vocational rehabilitation services in this case further supports, not contradicts, the competent evidence establishing that plaintiff reached MMI as of 25 January 1999. Plaintiff's assignment of error to the contrary is overruled.

As there is competent evidence to support the Commission's finding that plaintiff reached MMI as of 25 January 1999, the Commission also did not err when it determined that plaintiff's entitlement to combined benefits under G.S. §§ 97-29 and 97-30 was greater than his entitlement to benefits under G.S. § 97-31 (60.6 weeks versus 50.4 weeks, respectively). We, therefore, overrule plaintiff's final two assignments of error.

Affirmed.

Judges BRYANT and THORNBURG concur.