* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and arguments before the Full Commission. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the opinion and award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Harris.
 * * * * * * * * * * *
The undersigned finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing, and in the executed Pre-Trial Agreement, as:
 STIPULATIONS *Page 2 
1. The parties are subject to the N.C. Worker's Compensation Act.
2. An employee-employer relationship existed between the Plaintiff and Defendant-Employer.
3. The carrier liable on the risk is Defendant-Carrier.
4. The employee's average weekly wage is $863.40 per week, yielding a weekly compensation rate of $557.60
5. Plaintiff is currently not receiving TTD benefits from Defendants.
6. The issues for determination are:
 a. Whether Plaintiff sustained a compensable occupational injury on September 13, 2004, resulting in injury to his back;
 b. The amount of disability compensation and medical compensation to which Plaintiff is entitled, if any;
 c. Whether Defendants are entitled to a credit against any disability benefits owed to Plaintiff for employer funded short term disability benefits paid to Plaintiff; and
 d. Whether Plaintiff is entitled to attorneys' fees and costs pursuant to N.C. Gen. Stat. § 97-88.1 for Defendants' litigiousness in defending this matter.
 * * * * * * * * * * * EXHIBITS
The following individuals testified at the hearing before the Deputy Commissioner:
 • David L. Bradley
 • Carolyn Broadwell
 • Thomas Jeffrey Blythe *Page 3 
The following documents were accepted into evidence as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement with stipulated documents including Plaintiff's medical records, medical bills, personnel file materials and discovery responses, including supplemental medical records added following the hearing before the Deputy Commissioner pursuant to Plaintiff's Motion to Supplement Stipulated Medical Records.
 • Exhibit 2: Position description for "Diverter Area `C' Palletizing" dated February 25, 2004
The following document was accepted into evidence as a Plaintiff's exhibit:
 • Exhibit 1: Draft affidavit of Jeff Blythe
The following documents were accepted into evidence as Defendants' exhibits:
 • Exhibit 1: Supervisor/nursing station slip dated September 13, 2004
 • Exhibit 2: Undated memo from Carolyn Broadwell to Andy Mancz
A transcript of a deposition of the following was also received post-hearing:
 • Dr. Robert A. Blake
 * * * * * * * * * * * EVIDENTIARY RULINGS
The objections raised by counsel at the deposition taken in this matter are ruled upon in accordance with the law and the opinion in this Opinion and Award.
 * * * * * * * * * * * *Page 4 
Based upon all of the competent credible evidence of record and the reasonable inferences arising therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 49 years old, a high school graduate, and had three years of college courses but no degree. He began working for Defendant-Employer in 1984 and had been employed there continuously since then.
2. On September 13, 2004, Plaintiff was working as a diverter in Defendant-Employer's plant in Charlotte. His job duties involved tending a conveyor belt that carried tires. Plaintiff identified the tires and inspected them for defects. If he found a defective tire, he removed it from the conveyor by hand. Plaintiff inspected about 4000 tires in an average shift.
3. Before his injury, Plaintiff typically worked a 12-hour shift seven days out of every two weeks.
4. During the early morning hours on September 13, 2004, around the middle of a 7 p.m-to-7 a.m. shift, Plaintiff's conveyor became jammed up with tires, causing several of the tires to fall off the conveyor onto the floor in a pile, an event that would occur six to ten times during a typical 12-hour shift. Plaintiff stopped the conveyor and set to work manually replacing the tires on the belt. Each tire weighed about 37 pounds. As Plaintiff was bending over, lifting and throwing the tires back onto the belt, he felt a "catch" and pain in his lower back.
5. After Plaintiff finished replacing the tires on the conveyor, he went back to his workstation in front of a console and sat back down. His lower back pain got worse, and after about 45 minutes, he left his workstation and notified his supervisor, Carolyn Broadwell, that he *Page 5 
had just hurt his back lifting tires and needed to see the plant nurse. Broadwell sent him to the plant nurse, Jeff Blythe.
6. Plaintiff went to see Blythe, who gave Plaintiff an 800-milligram ibuprofen tablet to take for the pain and told him to follow up with his family physician if he desired further treatment.
7. Plaintiff finished his shift at 7 a.m. and went home. Whereas Plaintiff had felt fine the weekend before starting his shift, he now had low back pain that was increasing.
8. Plaintiff went to his family physicians at Mount Holly Family Practice and saw Dr. Ron Kirkpatrick, who put Plaintiff on Vicodin and Flexeril and wrote Plaintiff out of work until September 28, 2004.
9. Plaintiff called into his family practice several times over the ensuing few days, complaining that the prescribed medications were not helping his pain significantly. On September 24, 2004, Dr. Kirkpatrick opined that Plaintiff should see a specialist.
10. On September 27, 2004, Plaintiff returned to Dr. Kirkpatrick complaining of continued back pain with radiation into his right leg. That day, Plaintiff's family practice made an appointment for Plaintiff with Dr. Robert Blake, an orthopedist, for September 30, 2004.
11. Per Dr. Kirkpatrick's original work excuse, Plaintiff returned to work with Defendant-Employer on September 28, 2004. Working caused Plaintiff's low back pain to increase, and Plaintiff got co-workers to cover his lifting duties. Plaintiff also alternated between sitting and standing.
12. Plaintiff presented to Dr. Blake on September 30, 2004. According to Dr. Blake's medical notes, Plaintiff described an acute onset of back pain approximately 2 weeks before, while "picking up tires and throwing them on the line" at work. Dr. Blake diagnosed Plaintiff *Page 6 
with degenerative disc disease ("DDD") with acute sciatica, likely L5 root with great toe involvement. Dr. Blake recommended physical therapy and the following work restrictions: two weeks of eight-hour shifts and three weeks of primarily sedentary work with lifting, pushing, and pulling limited to 10 pounds; no overhead work, bending or twisting; and alternating sitting and standing.
13. The next day, October 1, 2004, Plaintiff went to Defendant-Employer's plant and gave Dr. Blake's work note to Cathy Rinaldi, the plant nurse on duty that night. Rinaldi told Plaintiff that he could not return to work with the restrictions because, per a notation that plant nurse Blythe had made on his September 13, 2004, note, Defendant-Employer believed that Plaintiff's back injury was not work-related. This was the first time that Plaintiff had seen what Blythe had written, and Plaintiff told Rinaldi that it was wrong and that he had, in fact, hurt his back at work.
14. While he was with Rinaldi on October 1, 2004, Plaintiff filled out a written report of his September 13, 2004 injury. Rinaldi also filled out a Form 19, which was filed shortly thereafter with the Industrial Commission. However, Rinaldi told Plaintiff on October 1, 2004, that, based on Blythe's notation that the injury was not work-related, Defendants would deny Plaintiff's workers' compensation claim. Rinaldi suggested to Plaintiff that Plaintiff return to the plant the following Monday, October 4, 2004, and speak with someone in the human resources department about the matter.
15. Plaintiff returned to the plant on October 4, 2004 and spoke with Mike Deserrio, who suggested that Plaintiff apply for short-term disability benefits. While Plaintiff did not think this was the proper avenue for him to pursue, he nonetheless applied, hoping to assure at least some income stream for himself. *Page 7 
16. Plaintiff ended up receiving short-term disability weekly payments of $385.00 for 52 weeks through about the beginning of October 2005. Defendant-Employer fully funds its short-term disability plan.
17. Plaintiff did physical therapy throughout October 2004. He returned to Dr. Blake on October 26, 2004, describing some improvement, and Dr. Blake's plan was to return him to full-duty work on November 18, 2004. Dr. Blake wrote Plaintiff out of work until that date.
18. On November 17, 2004, Dr. Blake wrote Plaintiff out of work until December 7, 2004.
19. On December 7, 2004, Plaintiff returned to Dr. Blake, having now completed 19 physical therapy sessions and having done home therapy also. Plaintiff's back pain remained. Dr. Blake did not believe that surgery was indicated, so he referred Plaintiff to Dr. Herman Gore for long-term pain management and rehabilitation. Dr. Blake wrote Plaintiff out of work until Plaintiff could see Dr. Gore, and he also ordered a lumbar MRI.
20. Plaintiff underwent a lumbar MRI on December 16, 2004, which showed DDD most pronounced at L4-5 and L5-S1, and a protrusion at L4-5 affecting the L5 nerve root.
21. On December 21, 2004, Plaintiff presented to Dr. Gore complaining of continued low back pain on a daily basis at the 5/10 level. Dr. Gore's impression was that Plaintiff was suffering from lumbar DDD with discogenic pain, radicular and myofascial pain, and a lumbar disc bulge. Dr. Gore recommended further physical therapy and epidural steroid injections ("ESI").
22. On December 23, 2004, January 20, 2005 and February 10, 2005, Plaintiff underwent a series of three lumbar ESIs, which gave Plaintiff some temporary relief. *Page 8 
23. On February 9, 2005, Dr. Blake certified on a short-term disability form that Plaintiff could not work.
24. On February 12, 2005, Plaintiff underwent a nerve conduction study, which Dr. Gore read to show that Plaintiff was suffering from L5 radiculopathy.
25. On March 3, 2005, Plaintiff returned to Dr. Gore, still complaining of low back pain with episodes of extreme, incapacitating pain. Dr. Gore referred Plaintiff to Dr. William D. Hunter, a neurosurgeon.
26. Plaintiff presented to Dr. Hunter on March 3, 2005. Based on his evaluation, Dr. Hunter recommended surgery. On March 18, 2005, Plaintiff returned to Dr. Blake, who agreed with Dr. Hunter's surgical recommendation.
27. On April 1, 2005, Dr. Blake certified on a short-term disability form that Plaintiff remained totally disabled, that he had been so since October 1, 2004, and that it was unknown when Plaintiff would be able to return to work.
28. On April 5, 2005, Plaintiff underwent a right-sided L4-5 hemilaminectomy, discectomy, and foraminotomy with Dr. Hunter.
29. On May 12, 2005, Plaintiff followed up with Dr. Hunter, stating that he no longer had the excruciating low back pain, although he did have some hip and buttock pain and leg numbness. Dr. Hunter recommended that Plaintiff continue to increase his activity incrementally but cautioned him against heavy lifting, twisting, bending or turning. Dr. Hunter prescribed a course of physical therapy.
30. On May 16, 2005, Plaintiff returned to Dr. Gore complaining of continued pain at the 6-7/10 level and weakness, numbness, and tingling in his legs. Dr. Gore prescribed *Page 9 
Oxycodone and Flexeril and also recommended physical therapy. On a short-term disability form, Dr. Hunter stated that Plaintiff continued to be disabled.
31. On June 22, 2005, Plaintiff returned to Dr. Hunter having done physical therapy for about a month. Plaintiff continued to have low back pain, hip pain and occasional leg pain. Dr. Hunter restricted Plaintiff to light duty with no lifting over 30 pounds for one month beginning July 11, 2005.
32. On July 11, 2005, when Plaintiff contacted Defendant-Employer inquiring whether he could return to work with the restrictions issued by Dr. Hunter as noted in the previous paragraph, Plaintiff was told that there was no light duty work available.
33. On June 25, 2005 and July 16, 2005, Plaintiff underwent lumbar ESIs with Dr. Gore with some relief of his low back and radicular pain.
34. On September 9, 2005, Plaintiff returned to Dr. Gore stating that, although the ESIs had provided temporary relief, his pain had returned at the 5/10 level. Dr. Gore recommended an L5 selective nerve root block and certified that Plaintiff remained disabled.
35. On September 14, 2005, Plaintiff underwent the nerve root block with Dr. Gore.
36. On November 2, 2005, Plaintiff returned to Dr. Hunter, still with numbness in his right leg but with somewhat improved back pain. Dr. Hunter recommended an updated MRI.
37. Plaintiff underwent an MRI on November 11, 2005, which showed some normal post-operative changes at L4-5 without recurrent disc herniation but also foraminal narrowing of the L4 and L5 nerve roots on the right side.
38. Plaintiff underwent four more nerve root blocks with Dr. Gore from January through March 2006 with good, albeit temporary, relief of his pain. *Page 10 
39. On May 9, 2006, Plaintiff returned to Dr. Hunter, still with low back, hip, buttock, and leg pain. After reviewing the November 11, 2005, MRI results, Dr. Hunter recommended another surgery.
40. On June 5, 2006, Plaintiff underwent a right-sided L4-5 hemilaminectomy, discectomy, and foraminotomy, and foraminotomies of the L4 and L5 nerve roots with Dr. Hunter.
41. Plaintiff had no history of low back pain before September 13, 2004.
42. Dr. Blake is a board-certified orthopedic surgeon. He testified, and the Full Commission finds as fact, that Plaintiff's disc protrusion at L4-L5, as seen on the December 16, 2004, MRI, was a direct result of the tire-throwing incident that Plaintiff experienced on September 13, 2004. Dr. Blake based this testimony on the medical history, his review of the medical records and testing results, his 31 years of experience, and the significance of Plaintiff's not having any back symptoms prior to September 13, 2004.
43. Defendant-Employer has never allowed Plaintiff to return to work with any restrictions since September 13, 2004, despite Plaintiff's repeated inquiries and requests that he be allowed to return to work. Rather, Defendant-Employer has insisted that Plaintiff be medically cleared to work at unrestricted full-duty before he could return.
44. Defendant-Employer's position description for the position that Plaintiff was performing at the time of his injury on September 13, 2004, states it is "sedentary"-level work on a 12-hour shift, with "sedentary" defined as involving lifting of no more than 10 pounds and walking and standing only occasionally.
45. Plaintiff has not worked with Defendant-Employer or anywhere else since his last day worked with Defendant-Employer on September 29, 2004. *Page 11 
46. Plaintiff has shown that, since September 13, 2004, and ongoing, he has been and is disabled within the meaning of the Workers' Compensation Act.
47. As of the hearing, Plaintiff was having significant low back pain and his right leg was numb. As Plaintiff testified, because of his low back condition, it is sometimes difficult for him to walk, and he is unable to do much around his house, is sometimes unable to drive, and must rely on others for assistance.
48. Plaintiff has incurred out-of-pocket expenses for the medical treatment of his low back condition, which has been mostly paid for by his group health insurance.
49. The Full Commission finds Plaintiff's testimony to be more credible than that of supervisor Broadwell or company nurse Blythe.
50. Plaintiff has not yet reached maximum medical improvement for his low back condition.
51. The medical treatment that Plaintiff has heretofore received for his low back condition has been reasonably required to effect a cure, provide relief, and/or lessen the period of Plaintiff's disability.
52. Further medical treatment with Drs. Gore and Hunter will tend to effect a cure, provide relief, and/or lessen the period of Plaintiff's disability.
53. Defendants have not defended this claim without reasonable grounds.
 * * * * * * * * * * *
The foregoing Stipulations and Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident on September 13, 2004, in that he experienced a specific traumatic incident that arose out of and in the course of his *Page 12 
employment with Defendant-Employer and that directly resulted in an injury to Plaintiff's low back. N.C. Gen. Stat. § 97-2(6).
2. As of the date of the hearing before the Deputy Commissioner, Plaintiff is disabled within the meaning of N.C. Gen. Stat. § 97-2(9). Under Russell v. Lowes Product Distribution, 108 N.C. App. 762,425 S.E.2d 454 (1993),
 The burden is on the employee to show that he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment. The employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.
Russell at 765, 425 S.E.2d at 457 (citations omitted). Although Dr. Hunter released Plaintiff to return to light duty work as of July 11, 2005, Plaintiff continued to receive ESI from Dr. Gore after that date, and Dr. Gore filled out Plaintiff's disability work forms on September 9, 2005, pursuant to which Plaintiff received continuing short term disability until its exhaustion after 52 weeks in October 2005. Plaintiff then returned to Dr. Hunter's care in November 2005, resulting ultimately in a second spinal surgery in June 2006, following the hearing before the Deputy Commissioner. Based on that evidence, the Full Commission concludes that Plaintiff has met the requirement of producing "medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment" at least as of February 21, 2006. *Page 13 
3. Plaintiff is entitled to temporary total disability compensation in the amount of $557.60 per week for the entire period from September 14, 2004, through the date of the hearing before the Deputy Commissioner and ongoing, with the exception of September 28 and 29, 2004, when Plaintiff briefly returned to work. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to have Defendants provide him with medical treatment for his compensable low back condition. Plaintiff is also entitled to reimbursement from Defendants for any and all out-of-pocket expenses he has incurred for the treatment of his compensable low back condition since September 13, 2004, including but not limited to co-payments, prescription bills, and mileage. N.C. Gen. Stat. § 97-25.
5. Because Plaintiff has not yet reached maximum medical improvement, he is not entitled to permanent partial disability compensation at this time. When and if he reaches MMI and is rated, he may be entitled to permanent partial disability compensation if it constitutes his most munificent remedy at that point. N.C. Gen. Stat. § 97-31; Collins v.Speedway Motor Parts Corp., 165 N.C. App. 113, 598 S.E.2d 185 (2004).
6. Defendants are entitled to a full credit for any and all short-term disability payments that Plaintiff has received from Defendant-Employer since September 13, 2004. N.C. Gen. Stat. § 97-42.
7. Plaintiff is not entitled to attorney's fees under N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * * *Page 14 
Based upon the foregoing Findings of Fact and Conclusions of Law, the undersigned makes the following:
 AWARD
1. Subject to the attorney's fee provision below, Defendants shall pay to Plaintiff, in a lump sum, temporary total disability compensation in the amount of $557.60 per week for the period from September 14, 2004 through the present (except for September 28 and 29, 2004), less the total amount of short-term disability compensation that Plaintiff has received from Defendant-Employer during that period.
2. Subject to the attorney's fee provision below, and until further Order of the Industrial Commission, Defendants shall pay Plaintiff ongoing temporary total disability compensation in the weekly amount of $557.60.
3. As Plaintiff's attorney's fee, Defendants shall make one-fourth of the amount calculated pursuant to Paragraph 1 above separately payable to Plaintiff's counsel. Defendants shall also make every fourth weekly check pursuant to Paragraph 2 above payable to Plaintiff's counsel.
4. Defendants shall reimburse Plaintiff for any and all out-of-pocket expenses that he has incurred for medical treatment for his compensable low back condition since September 13, 2004, including but not limited to co-payments, prescription bills, and mileage.
5. Drs. Gore and Hunter are hereby designated as Plaintiff's treating physicians and, subject to the limitations period set out in N.C. Gen. Stat. § 97-25.1, Defendants shall authorize and pay for the treatment that either or both of them recommend for Plaintiff's compensable low back condition, including but not limited to prescriptions, diagnostic testing, and referrals.
6. Plaintiff's claim for attorney's fees under N.C. Gen. Stat. §97-88.1 is DENIED. *Page 15 
7. Defendants shall pay the costs.
This the 25th day of April, 2007.
 S/________________ BUCK LATTIMORE CHAIRMAN
CONCURRING: S/________________ LAURA K. MAVRETIC COMMISSIONER
 S/________________ CHRIS SCOTT COMMISSIONER *Page 1