* * * * * * * * * * *
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, reverses the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS *Page 2 
1. The North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter of these proceedings. The parties are subject to the North Carolina Workers' Compensation Act, and the parties are properly before the North Carolina Industrial Commission.
2. The parties are correctly designated, and there is no question as to the mis-joinder or the non-joinder of any party.
3. Plaintiff suffered an alleged work injury on December 11, 2002.
4. An employment relationship existed between the parties on the date of the work injury giving rise to this claim.
5. Penn National (hereinafter referred to as "Defendant-Carrier") provided workers' compensation insurance coverage on the date of the work injury giving rise to this claim.
6. Judicial notice is taken of North Carolina Industrial Commission Forms 18, 33, 33R, and 60.
7. Plaintiff's average weekly wage was $431.96, yielding a compensation rate of $287.99 per week on the date of the work injury giving rise to this claim.
8. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit one (1) — North Carolina Industrial Commission forms and filings, photographs of Plaintiff's December 11, 2002 motor vehicle accident, a police report concerning Plaintiff's December 11, 2002 motor vehicle accident, and Plaintiff's medical records, including physical therapy notes; *Page 3 
 b. Plaintiff's Exhibit one (1) — Memorandum dated October 22, 2004 from Mr. Fred McDougall, B.S., C.S.A.C., C.C.S., substance abuse program supervisor;
 c. Deposition of Dr. James Edwin Rice;
 d. Defendants' Exhibit one (1) — — Printout of medical and indemnity payments made by Defendants.
 * * * * * * * * * * * ISSUES
The issues for determination are:
1. What is the time period in which Plaintiff is entitled to receive temporary total disability compensation as a result of his December 11, 2002 work injury?
2. Whether Plaintiff is entitled to ongoing or past temporary total disability compensation and medical care as a result of his December 11, 2002 work injury?
3. Whether Plaintiff is entitled to permanent partial disability compensation, and if so, what amount?
4. Whether Plaintiff is entitled to payment for his efforts to seek an associate's degree as a means of vocational rehabilitation in order to restore him to his pre-injury wages?
5. Whether Plaintiff is entitled to attorney's fees, pursuant to N.C. Gen. Stat. § 97-88.1?
 * * * * * * * * * * *
Based upon the competent and the credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT *Page 4 
1. Plaintiff is 52 years old, having a date of birth of April 14, 1956. In the early 1990's, Plaintiff served time in prison for a felony drug conviction. Plaintiff began working as a truck driver with Speer Concrete (hereinafter referred to as "Defendant-Employer") in 1998. In January 2002, Plaintiff sustained a compensable work injury to his right knee, for which he received a 27 percent permanent partial disability rating. Defendants paid this claim pursuant to a Form 21.
2. On December 11, 2002, Plaintiff was working for Defendant-Employer when he became injured in a motor vehicle accident. Plaintiff sustained injuries to his neck, back, shoulder, and right knee. After being treated by emergency medical personnel at the scene of the motor vehicle accident, and following continued treatment at the emergency department of Moore Regional Hospital in Pinehurst, North Carolina, Plaintiff followed up with his family doctor at Carthage Medical Center, who, in turn, referred him to Dr. James Edwin Rice, an orthopaedic surgeon from whom Plaintiff sought treatment for his January 2002 work injury.
3. Dr. Rice reviewed magnetic resonance imaging (MRI) of Plaintiff's back and right knee. Based upon Dr. Rice's review of these films, he diagnosed Plaintiff with a lumbar strain to the back, which ultimately improved with conservative treatment. Further, Dr. Rice concluded that Plaintiff's right knee had more extensive tearing of the posterior horn of the lateral meniscus, with significant edema in the tibial plateau. On April 14, 2003, Plaintiff underwent right knee arthroscopy by Dr. Rice for meniscus repair.
4. On August 8, 2003, Dr. Rice opined that Plaintiff reached maximum medical improvement, and issued a five (5) percent permanent partial disability rating to his back, as well as a five (5) percent permanent partial disability rating to his right knee, which was in addition to and in excess of the previous 27 percent permanent partial disability rating to Plaintiff's right knee. *Page 5 
Dr. Rice opined that Plaintiff could perform light-duty work, with no lifting greater than 50 pounds, limited walking on uneven surfaces, no truck driving, and limited bending, stooping, and climbing. Plaintiff returned to see Dr. Rice a few times on an as-needed basis following the August 8, 2003 visit, during which time, the Full Commission finds that Plaintiff's condition with respect to his back and right knee did not appreciably change. On October 28, 2005, Plaintiff last saw Dr. Rice.
5. When Dr. Rice released Plaintiff to return to work on August 8, 2003, Defendant-Employer had no work available for him that was within his physical restrictions. Specifically, Defendant-Employer had no employment that did not involve truck driving. Further, Defendants did not assign a vocational rehabilitation case manager or a nurse case manager at that time in order to assist Plaintiff in his return to gainful employment. Defendants did, however, continue to pay temporary total disability compensation to Plaintiff.
6. Plaintiff's employment experience prior to his December 11, 2002 work injury consisted primarily of truck driving, and Plaintiff did not have any employment skills which would transfer to light-duty to medium-duty employment classifications. Plaintiff independently enrolled in a community college in August 2003 in order to retrain for gainful employment elsewhere.
7. In July 2004, Defendants assigned a vocational case manager in order to assist Plaintiff in his job search efforts, well after Plaintiff enrolled at the community college. In addition to attending and paying for his schooling on his own, Plaintiff complied with the recommendations of the vocational case manager, and participated in employment searches while he was simultaneously working to obtain his associate's degree. The evidence of record concerning the results of these employment searches indicates that Plaintiff's vocational case *Page 6 
manager could only locate potential employment opportunities within Plaintiff's restrictions in the Raleigh, North Carolina area, which is over one (1) hour's drive from Plaintiff's home. There is no evidence that any of these potential employers actually offered Plaintiff any type of employment position. Thus, the Full Commission finds that there is no evidence that employment was available to Plaintiff within his restrictions.
8. Plaintiff obtained an associate's degree in May 2005. On October 17, 2005, Plaintiff became employed as a substance abuse counselor at Morrison Correctional Institution in Hoffman, North Carolina, where Plaintiff had been working as an intern in connection with his associate's degree curriculum. On October 18, 2005, Defendants terminated Plaintiff's temporary total disability compensation, pursuant to a Form 28.
9. Defendants accepted Plaintiff's December 11, 2002 work injury as compensable, pursuant to a Form 60, on January 7, 2003. Thereafter, Defendants paid for workers' compensation benefits, including medical benefits and temporary total disability compensation for the period from December 19, 2002 through October 17, 2005. Defendants' Exhibit one (1), which the parties stipulated into evidence at the hearing before the Deputy Commissioner, indicates that Plaintiff last received medical compensation on November 14, 2005, and last received temporary total disability compensation on December 8, 2005.
10. The Full Commission finds that because Plaintiff reached maximum medical improvement on August 8, 2003, and then continued to receive temporary total disability compensation until October 17, 2005, temporary total disability compensation was the more munificent remedy because the payments exceeded the amount he would have received for his permanent partial disability rating to his back and right knee. *Page 7 
11. Following Plaintiff's attainment of maximum medical improvement, Defendants provided Plaintiff with vocational rehabilitation services. The Full Commission finds that Plaintiff's efforts to seek an associate's degree in order to find more suitable employment were done of his own volition, and in addition to the efforts made by Defendants to provide him with vocational rehabilitation services in order to restore Plaintiff to his pre-injury wages.
12. Plaintiff never raised the issue of reimbursement of his costs in obtaining his associate's degree in the Pre-trial Agreement, at the hearing before the Deputy Commissioner, or in his contentions to the Deputy Commissioner. Moreover, Plaintiff presented no evidence concerning the actual cost of obtaining his associate's degree. The first notice Defendants had of Plaintiff's intent to seek reimbursement of his costs in obtaining his associate's degree was in his Proposed Opinion and Award to the Deputy Commissioner, dated March 19, 2008. Plaintiff never requested (until March 19, 2008), nor did Defendants ever authorize payment for his efforts to seek an associate's degree as a means of vocational rehabilitation in order to restore him to his pre-injury wages.
13. Since Defendants had no notice that Plaintiff was seeking payment for his efforts to seek an associate's degree, the Full Commission finds that it is not reasonable for Defendants to pay for such educational pursuits, under the circumstances.
14. Defendants did not defend this claim without reasonable grounds, and as such, the assessment of attorney's fees under N.C. Gen. Stat. § 97-88.1 is neither proper nor justified.
 * * * * * * * * * * *
Based upon the foregoing stipulations and upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 8 
1. Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of his employment on December 11, 2002. N.C. Gen. Stat. § 97-2(6) (2007).
2. As a result of Plaintiff's December 11, 2002 work injury, he became temporarily totally disabled, and remained as such until after he obtained his associate's degree and began new employment as a substance abuse counselor at Morrison Correctional Institution in Hoffman, North Carolina on October 17, 2005. N.C. Gen. Stat. § 97-29 (2007).
3. Where an employee can show both a disability pursuant N.C. Gen. Stat. §§ 97-29 or 97-30, as well as a specific impairment pursuant to N.C. Gen. Stat. § 97-31, he may not collect benefits pursuant to both schemes, but rather, is entitled to select the statutory compensation scheme which provides the more munificent remedy. Collins v. SpeedwayMotor Sports Corp., 165 N.C. App. 113, 598 S.E.2d 185 (2004). An employee is required to make the election between benefits for lost earning capacity pursuant to N.C. Gen. Stat. §§ 97-29 or 97-30, or benefits for a permanent partial disability rating pursuant to N.C. Gen. Stat. § 97-31, at the point of maximum medical improvement. Id. Maximum medical improvement is a purely medical determination which occurs when the employee's physical recovery reaches its peak, and is otherwise defined as the end of the healing period. North Carolina appellate courts further define the end of the healing period as the point in time when the employee's medical condition stabilizes, or when the medical condition becomes permanent. Carpenter v. Industrial Piping Co.,73 N.C. App. 309, 326 S.E.2d 328 (1985).
4. In this case, because Plaintiff reached maximum medical improvement on August 8, 2003, and then continued to receive temporary total disability compensation until October 17, 2005, Plaintiff constructively elected to receive temporary total disability compensation, which was the more munificent remedy, in lieu of the permanent partial disability compensation to *Page 9 
which he would have otherwise been entitled. Collins, 165 N.C. App. 113,598 S.E.2d 185 (2004). Because Plaintiff made this constructive election of remedies in favor of continuing temporary total disability compensation, he is no longer eligible to receive the five (5) percent permanent partial disability compensation for the ratings to his back and right knee. Id. Plaintiff's election of the continuing temporary total disability compensation served to offset the permanent partial disability compensation otherwise owing by Defendants. Id.
5. Following Plaintiff's attainment of maximum medical improvement, Defendants provided Plaintiff with vocational rehabilitation services. Plaintiff's efforts to seek an associate's degree in order to find more suitable employment were done of his own volition, and in addition to the efforts made by Defendants to provide him with vocational rehabilitation services in order to restore Plaintiff to his pre-injury wages.
6. Plaintiff never raised the issue of reimbursement of his costs in obtaining his associate's degree in the Pre-trial Agreement, at the hearing before the Deputy Commissioner, or in his contentions to the Deputy Commissioner.
7. Vocational rehabilitation comes under the definition of medical compensation. Defendants have the right to direct such efforts, just as with any other medical treatment. N.C. Gen. Stat. § 97-2(19) (2007). Since Plaintiff never requested approval by Defendants for payment of his efforts to seek an associate's degree as a means of vocational rehabilitation in order to restore him to his pre-injury wages until nearly three (3) years after he completed the associate's degree, Plaintiff's request was untimely, and it is not reasonable for Defendants to pay for such educational pursuits, under the circumstances.
8. Defendants did not defend this claim without reasonable grounds, and as such, the assessment of attorney's fees under N.C. Gen. Stat. § 97-88.1 is neither proper nor justified. *Page 10 
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff's claim for permanent partial disability compensation for his back and right knee is DENIED.
2. Plaintiff's claim for additional medical compensation is DENIED.
3. Plaintiff's claim for payment for his efforts to seek an associate's degree as a means of vocational rehabilitation in order to restore him to his pre-injury wages is DENIED.
4. Plaintiff's claim for attorney's fees, pursuant to N.C. Gen. Stat. § 97-88.1 is DENIED.
5. Defendants shall pay the costs of these proceedings.
This the __ day of December 2008.
 S/_______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________________ DANNY LEE McDONALD COMMISSIONER
 S/_______________________ LAURA KRANIFELD MAVRETIC *Page 11 
COMMISSIONER