***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms with modifications the Opinion and Award of the Deputy Commissioner.
 *********** ISSUES
1. When did Plaintiff reach maximum medical improvement?
2. Whether Defendants are entitled to a credit for temporary total disability compensation paid, and if so, in what amount? *Page 2 
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which the parties entered into at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and the subject matter. Plaintiff sustained a compensable injury as a result of electrocution occurring on May 7, 2003.
2. Defendants filed a Form 60 dated July 28, 2003. Plaintiff's average weekly wage at the time of this accident was $581.46. Plaintiff's Form 18M, Application for Additional Medical Compensation, was approved by the Industrial Commission on March 13, 2007. Plaintiff was released to trial work with restrictions on December 6, 2005, pursuant to order of Dr. Gloria Liu.
3. Plaintiff's trial return to work from February 5, 2005 to February 24, 2005 was unsuccessful. Defendants executed a Form 62 on March 21, 2005 acknowledging reinstatement of compensation for temporary total disability. Plaintiff was released to return to work without restriction on July 10, 2007 pursuant to the order of Dr. Michael Lee.
4. Plaintiff did commence employment with Carolinas Medical Response, Inc. on July 12, 2007, at a starting hourly rate of $9.25. Plaintiff received a permanent partial impairment rating to his right lower extremity and whole person from Dr. Jeffrey K. Kobs, Raleigh Orthopedic Clinic, on or about December 1, 2004.
5. Plaintiff received permanent partial impairment ratings to the right and left arms and right and left legs from Dr. Michael D. Peck, UNC Hospitals, on August 31, 2006.
6. A series of twenty-seven photographs were taken under the direction of Dr. Peck *Page 3 
on or about August 31, 2006, evidencing body and facial disfigurements sustained by Plaintiff.
7. Plaintiff underwent surgical removal of his appendix in June, 2003.
8. Plaintiff underwent a left carpal tunnel release on August 28, 2003.
9. Plaintiff underwent arthroscopic surgery on his right knee on April 28, 2004.
10. Plaintiff underwent a below-the-knee amputation of his right leg on July 15, 2004.
11. Plaintiff underwent revision of the tracheotomy scar on his neck on November 14, 2005.
 *********** EXHIBITS
The following documents were accepted into evidence as stipulated Exhibits:
 a. Exhibit 1: Executed Pre-Trial Agreement;
 b. Exhibit 2: Industrial Commission Forms;
 c. Exhibit 3: Plaintiff's medical records;
 d. Exhibit 4: Nurse case manager's report dated March 21, 2006;
 e. Exhibit 5: Plaintiffs summary of his scarring; and
 f. Exhibit 6: Photographs taken per Dr. Peck
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is twenty-seven years old at the time of this decision, with a date of birth of February 6, 1982.
2. On May 7, 2003, Plaintiff was working with Defendant-Employer as a lineman, *Page 4 
when he sustained two electrical shocks that went through his body and exited in several locations. Plaintiff sustained electrical burns to approximately forty-three percent of his body, with about one-third of the burned areas being third-degree burns and the remainder being second-degree burns.
3. Plaintiff was admitted to the burn unit at UNC Hospitals on May 7, 2003, where he was treated for the burns to his ears, arms, trunk, buttocks, legs and feet. Plaintiff remained hospitalized for over two months and underwent extensive skin graft operations, two decompression surgeries and multiple other medical procedures, including a tracheotomy.
4. Plaintiff was discharged from UNC Hospitals on July 17, 2003 and returned home to Whiteville, North Carolina, where he resided with his parents. During the weeks that followed, Plaintiff's mother, Melinda Ward, helped Plaintiff with his wound care and taught him how to do it himself. Prior to Plaintiff's discharge, the staff at UNC Hospitals had instructed her in the proper care for Plaintiff's wounds, but no physician prescribed attendant care, nor did Plaintiff or anyone else contact Defendant-Carrier or the Industrial Commission to seek authorization for attendant care services. Ms. Ward initially missed two weeks of work to stay home with Plaintiff. Approximately three or four weeks after his release from the hospital, Plaintiff was proficient in his own wound care.
5. In August 2003, Plaintiff underwent a carpal tunnel release to his left wrist, which was causally related to the May 7, 2003 accident.
6. In April 2004, Plaintiff underwent a right knee arthroscopy, causally related to the May 7, 2003 accident.
7. As the result of a failure of the exit wounds on his right foot to heal, and the development of osteomyelitis, Plaintiff underwent a below-the-knee amputation of his right leg *Page 5 
on July 15, 2004. Following the amputation, there has been an ongoing effort to fit Plaintiff with prostheses, complicated periodically by sustained shrinkage of the right leg stump and skin breakdown. Plaintiff has also engaged in extensive physical therapy for rehabilitation of his right leg function with the prosthesis.
8. Plaintiff underwent a functional capacity evaluation on November 11, 2004. The evaluator concluded that Plaintiff could not safely return to his pre-injury job and that he would benefit from further therapy to improve his right leg strength, balance, function and gait. Specifically, with regard to Plaintiff's right knee function, the evaluator noted that Plaintiff "demonstrated normal range of motion of right knee but was limited in flexion with use of [the] prosthesis."
9. On December 1, 2004, nearly nineteen months after the accident, Plaintiff saw Dr. Kobs for an independent medical examination. Dr. Kobs concluded that Plaintiff was at maximum medical improvement with a PPI rating of seventy percent to his right leg, or twenty-eight percent to his whole person. Dr. Kobs testified that his December 1, 2004 evaluation was limited to the orthopedic status of Plaintiff s right leg only and did not take into account the conditions of Plaintiff's left leg, right arm, left wrist and extensive burns on numerous body planes.
10. Plaintiff attempted a trial return to work with Defendant-Employer beginning on February 5, 2005. As of February 24, 2005, Plaintiff withdrew from work because the demands of the job were causing irritation, pain and skin breakdowns, which made him unable to do his job in a safe and efficient manner.
11. Defendants reinstated temporary total disability compensation, and Plaintiff renewed vocational rehabilitation efforts. Plaintiff also continued to receive medical treatment *Page 6 
for maintenance of his right leg stump and prostheses, as well as ongoing physical therapy to try to improve his right leg function.
12. In his vocational rehabilitation after the failed trial return to work, Plaintiff initially tried a forestry program, which ended unsuccessfully because the physical and environmental requirements were not compatible with Plaintiff's condition. Plaintiff later enrolled in and completed a basic EMT certification course.
13. On August 31, 2006, Dr. Peck released the Plaintiff from his care and assigned PPI ratings of seventy-five percent to Plaintiffs right leg, eighteen percent to his left leg, ten percent to his right arm and ten percent to his left hand. Prior to assigning these ratings, Dr. Peck had not seen Plaintiff for over two years.
14. Plaintiff continued to treat with Dr. Liu for maintenance of his burn sites and his right leg amputation. Dr. Michael Lee assumed Plaintiff's care from Dr. Liu upon the latter's departure from this medical practice.
15. The medical evidence establishes that at the time of Dr. Kobs' evaluation a functional capacity examination supported continued physical therapy to reduce the significant risk of injury if the Plaintiff returned to his prior employment at that time and Plaintiff needed continued active medical treatment to increase his strength and flexibility along with his walking gait. The record unequivocally establishes that Plaintiff, upon his trial return to work, was physically incapable of performing his job duties. After the unsuccessful return to work, the medical evidence establishes that Plaintiff continued active treatment. The course of treatment during this period improved Plaintiff's conditions.
16. Dr. Lee released Plaintiff from regular care on July 10, 2007 with no restrictions. Plaintiff started working as an EMT on July 12, 2007 and remained in that job as of the hearing *Page 7 
before the Deputy Commissioner.
17. At the hearing, the Deputy Commissioner viewed the scarred areas of Plaintiff's body, and considered the photographs in Stipulated Exhibit 6 as fairly and accurately depicts of the scarring. The Full Commission has viewed the photographs in Stipulated Exhibit 6. Plaintiff has scarring on the backs of his ears that is not readily visible to the casual observer, and there is visible scarring on his throat from surgical procedures. Plaintiff also has the following scarring on his body: burn scars along the outside of his right arm and a long surgical scar on the inside of his right arm; a scar on his left wrist from the carpal tunnel release; a scar on his abdomen from removal of the appendix; extensive scarring on his torso, chest, back and buttocks from skin grafting; and extensive scarring on both legs from skin grafting.
18. Plaintiff has to avoid environmental exposures to his skin grafts, and he must take other measures to care for the skin-grafted areas. Plaintiff must use sun block on the affected areas and treat the affected areas daily with lotion.
19. Despite his scarring, Plaintiff has been able to find and maintain employment. As an EMT, he wears a uniform that fully covers the scarring on his torso, chest, back, buttocks and legs.
20. Plaintiff has a demonstrated inability to squat fully. When Plaintiff tries to squat, the prosthesis gets in the way near full flexion, thus inhibiting full natural function in Plaintiff's right knee. Plaintiff also walks with a pronounced limp and cannot take stairs more than one at a time.
21. Plaintiff has elected at this time to pursue his remedy under N.C. Gen. Stat. § 97-31 rather than pursue any ongoing entitlement that he may have to indemnity compensation under N.C. Gen. Stat. §§ 97-29 and/or97-30. *Page 8 
 ***********
The foregoing Stipulations and Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. "Maximum medical improvement" signifies that the healing period for all medical conditions causally related to an injury by accident has ended. The healing period continues until after a course of treatment and observation, the injury is determined to be permanent and that fact is duly established. Collins v. Speedway Motor Sports Corp.,165 N.C. App. 113, 598 S.E.2d 185 (2004). Defendant's contention that Plaintiff reached maximum medical improvement on December 1, 2004 upon the evaluation of Dr. Kobs is not well taken. Plaintiff continued to undergo medical treatment and physical therapy to successfully improve his medical conditions. Plaintiff reached maximum medical improvement on July 10, 2007 when he was released from active care by Dr. Lee. N.C. Gen. Stat. § 97-31.
2. Plaintiff's most favorable disability compensation remedy is permanent partial disability benefits. N.C. Gen. Stat. § 97-31.
3. As the date of maximum medical improvement is July 10, 2007, the issue of Defendants' right to a full credit for all temporary total disability compensation paid after the date of maximum medical improvement established by the Deputy Commissioner is moot.Collins v. Speedway Motor Sports Corp., 165 N.C. App. 113
(2004).
4. Plaintiff is entitled to receive the full two hundred weeks of permanent partial disability compensation for loss of his right leg due to the amputation. Although the amputation was below the knee, he does not retain full natural knee function with the use of his prosthesis. N.C. Gen. Stat. § 97-31(15); NCIC Rule 405(4).
5. Plaintiff is entitled to receive permanent partial disability compensation for thirty-six *Page 9 
weeks for his left leg, twenty-four weeks for his right arm, and twenty weeks for his left hand. N.C. Gen. Stat. § 97-31.
6. Plaintiff is entitled to receive $1,000 as compensation for head disfigurement for the scarring to his ears. N.C. Gen. Stat. § 97-31(21).
7. Plaintiff is entitled to receive the following amounts as compensation for serious bodily disfigurement: $2,000.00 for his throat scarring; $5,000.00 for his right arm scarring; and, $1,500.00 for his left wrist scarring. N.C. Gen. Stat. § 97-31(22). The remainder of Plaintiff's scarring beyond that specifically enumerated is typically covered by clothing and does not affect Plaintiff's wage-earning capacity. As such, no compensation is payable for the remainder of Plaintiff's scarring. N.C. Gen. Stat. § 97-31(22).
8. Plaintiff is entitled to receive $20,000.00 for the skin graft scarring to his torso, chest, buttocks and both legs, as this scarring constitutes permanent injury to Plaintiff's skin, an important external organ. N.C. Gen. Stat. § 97-31(24).
9. Plaintiff is entitled to receive $1,000.00 for the loss of his appendix. N.C. Gen. Stat. § 97-31(24).
10. Plaintiff's claim for "attendant care services" for the care provided by his mother following his release from the hospital should be denied. Plaintiff did not seek or obtain prior approval for attendant care services from the Industrial Commission or Defendants, nor did any physician order such services. N.C. Gen. Stat. § 97-25.
11. Plaintiff is entitled to payment of all expenses for medical treatment, rehabilitation, prosthetics, prescriptions, mileage and any other medical services heretofore incurred and related to his compensable injuries and conditions. N.C. Gen. Stat. §§ 97-2(19) 97-25. *Page 10 
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the undersigned makes the following:
 AWARD
1. Defendants shall pay Plaintiff the amounts of compensation awarded in the Conclusions of Law, subject to Plaintiff's reasonable attorney fee provided for hereinafter. All sums liquidated to the date of this Award shall be paid in lump sum and unliquidated compensation for permanent partial disability shall be paid weekly.
2. Plaintiff shall pay a reasonable attorney fee of twenty-five percent of the disability compensation enumerated in Paragraph 1 of this Award. For disability compensation liquidated to the date of this Award, Defendants shall deduct the attorney fee approved from the sums due the Plaintiff and pay the same directly to Plaintiff's counsel. For future permanent partial disability benefits paid to Plaintiff, Defendants shall deduct every fourth payment and forward the same to Plaintiff's counsel.
3. To any extent they have not already done so, Defendants shall pay all expenses for medical treatment, rehabilitation, prosthetics, prescriptions, mileage and any other medical services heretofore incurred and related to Plaintiff's compensable injuries and conditions when they have been submitted according to established Industrial Commission procedures.
4. The Form 18M, as approved by Executive Secretary Weaver on March 13, 2007, remains in full force and effect.
5. Defendants shall pay the costs. As part of their costs, if they have not done so already, Defendants shall pay an expert witness fee to Dr. Kobs in the amount of $551.00, or the amount actually billed, whichever is less. *Page 11 
6. This case is REMOVED from the Wilmington hearing docket.
This the ___ day of July, 2009.
S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ LAURA K. MAVRETIC COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER