***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Deluca with minor modifications and enters the following Opinion and Award.
 *********** ISSUES
The issues for determination in this matter are:
 (1) Whether Plaintiff is entitled to compensation for temporary total disability from December 26, 2007 to present and continuing; and *Page 2 
 (2) Whether Plaintiff is entitled to all related medical treatment and expenses reasonably necessary for or tending to effect a cure or relief for Mr. Bell's injuries.
 *********** EXHIBITS
1. Stipulated Exhibit 1: Pre-Trial Agreement.
2. Stipulated Exhibit 2: Medical Records
3. Stipulated Exhibit 3: Industrial Commission Forms
4. Stipulated Exhibit 4: Plaintiff's Discovery
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
2. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. Plaintiff alleges to have sustained a compensable injury on December 25, 2007.
5. Plaintiff was employed by Defendant-Employer at all times relevant hereto.
6. At the time of the alleged injury, Plaintiff's average weekly wage was $788.60, yielding a compensation rate of $525.73. *Page 3 
7. Key Risk Insurance Company was the carrier on the risk at all times relevant to this action.
8. Plaintiff contends that he has been out of work since December 26, 2007 as a result of the injury or injuries underlying this claim.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff, who was 51 years old at the time of the hearing before Deputy Commissioner Deluca, began working for Defendant-Employer in July, 1977, following his graduation from high school. He has worked continuously since then and progressively advanced from being an EMT to an EMT Paramedic.
2. As part of his job, Plaintiff had to physically move patients, including loading and unloading patients from an ambulance.
3. In order to maintain an updated paramedic certification, Plaintiff was required to take continuing education classes on new drugs and medical equipment.
4. Plaintiff's job duties also included the use of medical devices, the administration of medicines, and numerous medical procedures such as intubation, placement of IVs, and decompression of the chest. Due to advances in medical technology, Plaintiff had to learn computerized medical devices and became proficient in entering medical reporting of activities performed in the field.
5. Throughout his career of 30 years as a paramedic for Defendant, Plaintiff has had two prior work-related injuries. The first one occurred in 2002, when he sustained a torn muscle *Page 4 
in his shoulder as a result of lifting a patient. This condition resolved with treatment. The second injury occurred in 2005, when he injured discs in his neck while carrying a patient. As a result of this injury, he ultimately had to undergo cervical fusion surgery in September, 2005. Plaintiff was able to return to work thereafter, although he was never completely asymptomatic after the surgery. Immediately prior to December 25, 2007, Plaintiff was not working under any restrictions.
6. For several months prior to the incident which gives rise to this claim, Plaintiff did not work, in part because of complications with what was thought to be lung cancer. Plaintiff testified that he was very healthy as of December 2007, and that he had recently stopped smoking due to the cancer scare. Plaintiff further testified that he was hiking and was actually physically better than he had been in years.
7. Plaintiff filed for retirement from Wilkes County EMS on November 26, 2007, with an expected retirement date of January 1, 2008.
8. On December 25, 2007, Plaintiff injured his neck, right shoulder, and spine as a result of a fall he sustained as he was exiting the back of an ambulance after having loaded a patient. Plaintiff opened the back of the ambulance to step out, and he stumbled and fell, landing on the concrete surface with his head and right shoulder hitting the ground. He immediately felt pain and discomfort in his neck, back, and shoulder. He also developed a headache. Plaintiff continued to work his shift but notified his supervisor of the fall and thought he would be fine. After the next emergency call following his fall, Plaintiff was in significant pain, so he talked to his supervisor again, completed the accident report forms, and went home.
9. On the following day, Plaintiff was in significant pain. He presented to Dr. Mary Lou Church of Family Practice, Inc. to be examined. At that time, he had a headache and was *Page 5 
experiencing pain in his neck, right shoulder, and upper and lower back. X-rays taken of Plaintiff's cervical, thoracic, and lumbar spine on December 26, 2007 revealed no acute fractures, dislocations, or other bony abnormalities. Dr. Church diagnosed Plaintiff with cervical, thoracic, and lumbar sprain, as well as a contusion to the right shoulder. Dr. Church recommended rest and ice. These measures did not relieve Plaintiff's symptoms. Dr. Church did not write Plaintiff out of work or assign any work restrictions.
10. Given his continued pain, Plaintiff presented to Dr. Jeffrey Keverline of Carolina Orthopaedic Specialists on January 11, 2008, with complaints of mid-lumbar pain, some stiffness in his legs, and posterior neck pain with some radiating arm pain and tingling in his small finger. At that time Dr. Keverline wrote him out of work until he saw a surgeon.
11. Plaintiff was examined by Dr. Ralph Maxy, an orthopaedic surgeon, with Carolina Orthopaedic Specialists on January 31, 2008. Plaintiff complained of right sided neck pain and upper thoracic pain, which Dr. Maxy diagnosed as more likely than not, a strain. A strain is a pull or stretch of soft tissues and is typically treated with therapy and anti-inflammatory medications. It usually heals within a short period of time. Dr. Maxy recommended pain medications, physical therapy, and light duty work restriction against lifting more than 15 pounds and repetitive bending, twisting or stooping. Dr. Maxy opined that with time plaintiff's symptoms should improve. Plaintiff participated in approximately twelve sessions of physical therapy between February 7, 2008 and March 5, 2008, during which time his neck and back pain continued. Thereafter, Dr. Maxy continued his restrictions.
12. Plaintiff reported no improvement to Dr. Maxy on March 31, 2008, who noted that Plaintiff's cervical CT study showed no significant pathology to explain his symptoms. Dr. Maxy *Page 6 
recommended an MRI of the thoracic spine and continued Plaintiff's light duty work restriction.
13. Dr. Maxy reviewed the thoracic MRI on April 17, 2008, which showed a protrusion and central canal stenosis at T5-6 and facet arthropathy and ligamentum hypertrophy/calcification bilaterally at T10-11. Dr. Maxy recommended epidural steroid injections and again continued the existing light duty recommendations.
14. Concurrent with Dr. Maxy's care, Plaintiff received pain management treatment from Dr. Chang Feng at Caldwell Memorial Pain Center, who administered an epidural steroid injection and a facet joint block injection on or about May 5, 2008.
15. Plaintiff reported improvement during a June 13, 2008 examination with Dr. Maxy, and another two epidural injections were recommended. Dr. Maxy also continued Plaintiff's existing light duty restriction at that visit.
16. Dr. Feng administered a second epidural injection pursuant to Dr. Maxy's recommendation on July 21, 2008.
17. On July 29, 2008, Dr. Maxy noted that Plaintiff did not have any significant long-term relief from two epidural steroid injections or a facet joint injection. Dr. Maxy opined that Plaintiff's radiology studies do not show any objective pathology to explain Plaintiff's continued complaints of neck pain. Dr. Maxy recommended a third epidural injection and opined that because Plaintiff was not a surgical candidate, he was nearing maximum medical improvement. Dr. Maxy recommended a functional capacity evaluation (FCE) and wrote Plaintiff out of work pending the next evaluation.
18. On August 15, 2008, Dr. Donald Brown at Unifour Pain Clinic administered to Plaintiff a third epidural steroid injection. *Page 7 
19. On August 25, 2008 and August 26, 2008, physical therapist Betty Gast, administered Plaintiff's FCE.
20. During Plaintiff's two-day FCE, Plaintiff did not report being sedated or drowsy. Ms. Gast did not objectively observe any apparent sedation, and sedation was not a factor in Plaintiff's FCE results.
21. Plaintiff's functional capacity was based on Plaintiff's testing results from the second day of the FCE when Plaintiff exhibited a lower functional capacity as compared to the first day of the evaluation.
22. Ms. Gast testified to a reasonable degree of medical certainty, that Plaintiff's FCE was reliable and resulted in a proper determination of Plaintiff's functional abilities. According to the FCE Plaintiff could lift up to 20 pounds on an occasional basis, up to ten pounds on a frequent basis and above shoulder level within these respective weights on a limited basis.
23. Dr. Maxy reviewed the FCE results on September 2, 2008. Using the FCE and his objective examinations, Dr. Maxy recommended permanent restrictions of no lifting more than 20 pounds, no reaching overhead repetitively, and no repetitive bending or twisting. Dr. Maxy explained that based on these limitations, Plaintiff would be limited in terms of standing or sitting for long periods of time, would need to be allowed to sit and stand as tolerated and would not be able to perform repetitive activities.
24. Dr. Maxy noted on September 2, 2008, that Plaintiff was not a surgical candidate, but that he may gain benefit from pain management with a pain clinic on a short-term basis, followed eventually by his family physician who can continue to manage his symptoms. Dr. Maxy testified that his medicinal recommendations could be carried out by Plaintiff's family physician. However, he also testified that he would defer to Dr. Brown on this point. *Page 8 
25. On September 2, 2008 Dr. Maxy assigned a seven percent permanent partial impairment rating to Plaintiff's back and released Plaintiff to return as needed.
26. Plaintiff was seen for follow-up by Dr. Brown on December 3, 2008, and reported good relief of his thoracic disk symptoms.
27. During the hearing of this claim before the Deputy Commissioner, Plaintiff testified that he feels sedated and drowsy as a result of taking his pain medications and that such condition contributed to his inability to return to work.
28. Throughout the entirety of Dr. Maxy's treatment, Plaintiff did not report any issue with sedation or drowsiness, and Dr. Maxy did not observe any symptoms or side-effects of sedation or drowsiness.
29. Throughout the entirety of Dr. Brown's treatment, Plaintiff did not report feeling sedated or drowsy.
30. During the hearing before the Deputy Commissioner, Plaintiff testified that his functional capacity was less than the restrictions recommended by Dr. Maxy. Plaintiff testified that due to his reduced capacity, he felt he was unable to maintain employment for eight hours per day, five days per week.
31. Plaintiff also testified that he reported to Ms. Gast in August 2008, that he would walk approximately one and a half miles on a regular basis.
32. In addition to walking, Plaintiff testified that he fished on a regular basis, and even fly fished which required wading out into the stream and standing for a significant period of time. *Page 9 
33. Plaintiff testified that since December 25, 2007 he has not actively searched for any employment, he has not filed any job applications, and has not undertaken any efforts to find suitable employment.
34. The Full Commission finds that except for periods covered by out-of-work notes, Plaintiff has failed to show that he was unable to earn his pre-injury wages at any employment as a result of his compensable injury.
 ***********
Based on the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury to his back on December 25, 2007 while working for Defendant-Employer. N.C. Gen. Stat. § 97-2(6). However, Plaintiff has the burden to prove the existence and extent of his disability.Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982).
2. Plaintiff may meet his burden of proving disability by producing (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). *Page 10 
3. The greater weight of the evidence shows that Plaintiff is entitled to temporary total disability benefits from January 11, 2008 through January 31, 2008 and July 29, 2008 until September 2, 2008.Id. Plaintiff has failed to prove any further temporary disability related to his compensable injury. Id.
4. At the end of the healing period, plaintiff is entitled to receive compensation for total or partial disability under N.C. Gen. Stat. § 97-29 or § 97-30 or compensation for permanent partial disability under N.C. Gen. Stat. § 97-31, but not both. Collins v. Speedway Motorsports Corp.,165 N.C. App. 113, 598 S.E.2d 185 (2004).
5. As Plaintiff reached maximum medical improvement on September 2, 2008 and has failed to establish further temporary disability after reaching maximum medical improvement, Plaintiff is entitled to permanent partial disability of seven percent to his back resulting in 21 weeks of permanent partial disability at the rate of $525.73 per week. N.C. Gen. Stat. § 97-31(23).
6. Plaintiff is entitled to all reasonably necessary medical expenses for treatment related to his injury by accident, which tend to effect a cure, provide relief or lessen the period of disability, including additional evaluation and any additional treatment recommended by Dr. Donald Brown, Plaintiff's treating anesthesiologist. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based on the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission makes the following award:
 AWARD
1. Defendants shall pay to Plaintiff temporary total disability compensation from January 11, 2008 to January 31, 2008 and from July 29, 2008 to September 2, 2008. *Page 11 
2. Defendants shall pay to Plaintiff permanent partial impairment disability for 21 weeks at the rate of $525.73 per week, totaling $11,040.33.
3. Defendants shall pay all reasonably necessary medical expenses for treatment related to Plaintiff's injury by accident, which tend to effect a cure, provide relief or lessen the period of disability, including visits to Dr. Donald Brown reflected in the evidence of record.
4. An attorney's fee is approved for Plaintiff's counsel in the amount of 25% of the compensation to be paid under this Opinion and Award.
5. Defendants shall bear the costs, including an expert witness fee of $225.00 to Betty Gast.
This the 16th day of March 2010.
 S/___________________
 STACI T. MEYER
 COMMISSIONER
CONCURRING:
S/___________________ PAMELA T. YOUNG CHAIR
S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1