***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceeding before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and the subject matter. *Page 2 
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The parties were subject to the Workers' Compensation Act at the time of the compensable injury by accident of March 30, 2009.
4. An employer-employee relationship existed between the parties at the time of the compensable injury by accident of March 30, 2009.
5. The date of the injury which is the subject of this claim is March 30, 2009.
6. The Employer in this case is Brown's Mill Service and the carrier and/or claims administrator liable on the risk is Stonewood Insurance Company.
7. Plaintiff has complied with all conditions precedent/statutes of limitation pursuant to N.C. Gen. Stat. §§ 97-22, 97-23 and 97-24.
8. Plaintiff has been out of work since July 22, 2009 and has been receiving indemnity benefits in the amount of $247.67 per week since that time.
9. Plaintiff's average weekly wage is $371.49, which yields a compensation rate of $247.67.
 ***********
The following exhibits were received and admitted into evidence at the hearing before the Deputy Commissioner:
 EXHIBITS
1. Stipulated Exhibits:
 1. Pretrial agreement;
 2. Medical records;
 3. IC forms and filings; and *Page 3 
 4. Nurse/case management documents
2. Defense Exhibits:
 1. Discovery;
 2. Recorded statement;
 3. Surveillance DVD;
 4. Surveillance DVD;
 5. Surveillance DVD;
 6. Surveillance DVD; and
 7. Surveillance DVD
 ***********
The following depositions were received and admitted into evidence at the hearing before the Deputy Commissioner:
 DEPOSITIONS
The following depositions were received and admitted into evidence.
1. Deposition of Dr. Phillip Perdue, taken on August 26, 2010
2. Deposition of Dr. Williams A. Huff, taken on July 9, 2010
3. Deposition of Dr. Divya Patel, taken on June 10, 2010
4. Deposition of Elizabeth Fuller, RN, taken on June 2, 2010
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is forty-five (45) years old. His work history has primarily been in the field of welding. *Page 4 
2. As of March 2009, Plaintiff worked for Employer-Defendant and his job consisted primarily of the following: welding and other manual construction/repair jobs.
3. The compensable accident in this case occurred on March 30, 2009, when Plaintiff fell through the roof of a hog barn on which he was working, falling approximately twelve feet to the concrete floor. Plaintiff testified he primarily felt a stinging pain in his right wrist, as well as some pain in the left chest area, after the fall.
4. Because of the pain in his wrist, Employer bought Plaintiff some pain pills and an ace bandage. Plaintiff went home that day, but he returned to work the next day and continued working in his normal position. The Employer assumed that Plaintiff had just suffered a sprained wrist and that it would get better over time. As a result, the Employer did not report the accident to its workers' compensation carrier, Stonewood Insurance Company.
5. Over the course of the next several weeks, Plaintiff's pain did not improve. Plaintiff asked the Employer to take him to the doctor, and Employer took Plaintiff to Goshen Medical Center in Beulaville.
6. On April 28, 2009, Plaintiff was seen at Goshen Medical Center, and complained only of right wrist and left-sided chest and rib pain. Plaintiff's right wrist x-ray reflected a broken right wrist, scapholunate widening, and a foreign body within the dorsal soft tissues at the lateral aspect of the third metacarpal head. His arm was placed in a splint, and he was referred to orthopedist Dr. W. Alexander Huff for a specialty evaluation.
7. Dr. Huff, of Huff Orthopaedic Group, is a board-certified specialist in orthopedic surgery and treats all types of musculoskeletal injuries. Dr. Huff testified at his deposition that when new patients come in, they are asked to describe all of their symptoms. Plaintiff first saw Dr. Huff on April 29, 2009. There was no medical case manager present at that appointment, nor *Page 5 
was anyone from the Employer present. Plaintiff's only complaint was of right wrist pain. The medical record indicates that Plaintiff, "Denies any other acute injuries or ailments at this time."
8. Plaintiff was seen again by Dr. Huff on May 20, 2009, and Plaintiff's son was present, serving as an interpreter. There was no medical case manager present at this appointment either. Plaintiff only complaint at the second appointment was of right wrist pain. He made no mention of any problems with his neck, shoulder, elbows, back, or ankles. Dr. Huff referred Plaintiff to a hand specialist and provided a note that Plaintiff was capable of returning to work with no use of his right hand. Dr. Huff testified that he did not think that Plaintiff was disabled from all work.
9. Plaintiff's last visit with Dr. Huff was on June 10, 2009. This was an unscheduled visit. Plaintiff came in again with his son who served as an interpreter, and again, there was no medical case manager present at this appointment. Plaintiff once again made no other complaints of pain or injuries besides his right wrist. The medical record reflects that Dr. Huff was unable to provide any additional medical treatment at this time, again referred Plaintiff to a hand specialist, and indicated that Plaintiff could return to light duty work with no right hand work.
10. Plaintiff testified at the hearing before the Deputy Commissioner that in late May and early June of 2009, he began experiencing symptoms in other parts of his body in addition to his right wrist. Plaintiff testified at the hearing that these complaints included pain in his neck, both shoulders, both arms and elbows, chest, low back, both legs, and both ankles. Plaintiff testified that he told all of his doctors about these other symptoms at the time they arose in May and June of 2009. *Page 6 
11. However, Dr. Huff, who was treating Plaintiff in May and early June of 2009, testified that Plaintiff's claims of developing pain all over his body in late May and early June 2009, and reporting those symptoms to his doctors, was not consistent with how Plaintiff presented to him during that time period. Dr. Huff also testified that the only opinions he would be able to express about causation would be limited to the condition for which he treated Plaintiff, the right wrist. He specifically deferred to the doctors who had seen Plaintiff more recently for opinions regarding the causal relationship of other body parts.
12. Dr. Huff opined at his deposition that because Plaintiff was failing to improve, he would need surgery on his wrist. Dr. Huff transferred care to orthopedic surgeon Dr. Philip S. Perdue, Jr. . The Employer finally reported the injury to its carrier, and Stonewood Insurance Company accepted compensability of Plaintiff's injury and began providing medical treatment, medical case management services, and payment of temporary total disability benefits. Defendants filed a Form 60 accepting compensability of Plaintiff's right wrist injury. No other medical conditions were accepted as compensable, and Defendants have specifically denied responsibility for any medical conditions other than for Plaintiff's right wrist.
13. Dr. Philip S. Perdue, Jr., of Orthopaedics East, Inc., was Plaintiff's treating orthopedic surgeon from July 7, 2009 until April 7, 2010. Dr. Perdue is a board certified specialist in orthopedic surgery with an added qualification in sports medicine.
14. Dr. Perdue began treating Plaintiff for his right wrist injury on July 7, 2009. Plaintiff had a translator with him at the appointment. Plaintiff did not complain about any other body parts bothering him to Dr. Perdue at that time. Dr. Perdue examined Plaintiff and the medical record reflects that Plaintiff has a "posttraumatic type injury to the wrist" and an MRI scan was necessary to determine the type of surgery to perform. Dr. Perdue completed a Medical *Page 7 
Absence Report, indicating the Plaintiff could return to light duty with a "lifting/carrying limit of 10 lbs."
15. On July 22, 2009, Dr. Perdue performed a four corner intercarpal fusion with scaphoid excision.
16. On November 18, 2009, Plaintiff presented to Dr. Divya J. Patel, of Carolina Regional Orthopaedics, a specialist in physical medicine, rehabilitation, and pain medicine. The medical record reflects that Plaintiff complained of "shoulder pain, neck pain, bilateral lower limb pain, and bilateral ankle pain since injury at work about 8 months ago." The impression was (1) multiple joint pain status post fall 12 to 14 feet high; and (2) bilateral shoulder, bilateral elbow, right wrist, bilateral ankle and neck pain as well as bilateral thigh pain. Plaintiff was treated by Dr. Patel only for this one visit.
17. Dr. Patel testified at her deposition that Plaintiff's pain in multiple areas of the body did not correlate with any known pattern of injury to any particular area of the body, such as the neck, back, wrist, or shoulder. Therefore, Dr. Patel testified that she recommended a whole body bone scan, as well as x-rays to multiple areas of Plaintiff's body, and blood work-up for possible rheumatologic or system joint conditions like arthritis or lupus, as she was trying to determine what was going on with Plaintiff, and whether his condition was due to the fall or something systemic and totally unrelated. Dr. Patel testified, in response to a question about the causal relationship of Plaintiff's other body conditions, as follows: "Mr. Uriarte's symptoms and condition were not existent before his fall, and it happened after the fall, or since the fall, so they are related to the fall." This is the only opinion statement regarding causation given by Dr. Patel.
18. On December 2, 2009, Plaintiff presented for follow up to Dr. Perdue with concerns about an area of his hand where a bone graft was removed. The medical record reflects *Page 8 
that Plaintiff's motion is improved a little bit, but that "he will always have a stiff wrist." Dr. Perdue indicated an intent to rate and release Plaintiff at the next appointment in approximately eight (8) weeks.
19. On January 28, 2010, Plaintiff presented to Dr. Perdue "complaining of pain in his neck, both shoulders, and both elbows." The medical record reflects that Plaintiff had not been continuously complaining about these body parts while being treated by Dr. Perdue and that Dr. Perdue does not "believe that this is probably the related (sic) to his initial injury." Again, Dr. Perdue informed Plaintiff that his "wrist will never be normal based on his injury and subsequent surgery" and the Functional Capacity Evaluation was delayed until Plaintiff completed six more weeks of therapy.
20. Between July 7, 2009 and December of 2009, Plaintiff saw Dr. Perdue ten (10) times. During all of these visits, Plaintiff either had a translator or Dr. Perdue felt confident that he was able to communicate with Plaintiff. The medical records do not reflect any complaints by Plaintiff for any other body parts bothering him besides his right wrist, and Dr. Perdue testified at his deposition that he did not recall discussing other both parts until the January 28, 2010 appointment. Dr. Perdue further testified that he was not aware of Plaintiff's other complaints, however that he did not feel like, based on the multitude of his complaints, they were related to his isolated wrist injury. Dr. Perdue explained that if Plaintiff had suffered these types of injuries from his fall he would have expected his symptoms to have appeared "within a week or two." Dr. Perdue opined to a reasonable degree of medical certainty that, more likely than not, Plaintiff's claims of pain in areas other than his wrist were not causally related to his fall at work on March 30, 2009. Dr. Perdue further opined that, even if his pain had started in late May or early June 2009, as Plaintiff claimed at the hearing, that fact would not change his opinion. *Page 9 
21. Regarding his compensable wrist injury, Dr. Perdue testified that Plaintiff made a good recovery. His last visit with Plaintiff was on April 7, 2010. At that time, Plaintiff had reached maximum medical improvement (MMI) for his right wrist, and he was given a twenty-five (25%) percent permanent partial impairment (PPI) rating to the right hand. Plaintiff had undergone a functional capacity evaluation. Dr. Perdue placed work restrictions on Plaintiff as a result. These included limitations against carrying or climbing a ladder while holding equipment, and limitations against using power tools that involved vibration. However, Dr. Perdue felt that it would be fine for Plaintiff to use non-vibration tools. Dr. Perdue testified that Plaintiff was not disabled from all employment; that he was capable of returning to work within his restrictions; and that work as a welder would be appropriate for Plaintiff.
22. The Full Commission finds, based upon the greater weight of the evidence of record, including the deposition testimony of Dr. Perdue, that Plaintiff sustained an admittedly compensable injury by accident to his right wrist on March 30, 2009 arising out of and in the course of her employment with Defendant-Employer.
23. The Full Commission finds, based upon the greater weight of the evidence of record, including the deposition testimony of Dr. Perdue, that Plaintiff has not sustained any additional compensable injuries as a result of the accident on March 30, 2009. Plaintiff has failed to meet his burden of proving a causal relationship between his accident at work on March 30, 2009, and his other medical conditions beyond his broken right wrist, including but not limited to pain and limitations in his neck, shoulders, arms and elbows, chest, low back, legs, and ankles. *Page 10 
24. Plaintiff testified that he has not made any effort to look for work since he last worked for Defendant-Employer in July of 2009. Plaintiff stated that the work provided to him would require two hands.
25. The transcript of the hearing reflected that Defendants presented eye witness testimony, as well as the reports and videos of two private investigators: (1) Donald H. Groat and (2) B. Paul Rogers. Both of the investigators testified that they personally witnessed and videotaped Plaintiff on multiple days, engaging in activities such as driving, walking, pushing shopping carts, loading and unloading items, and shaking hands. Neither witnessed testified to Plaintiff having any difficulty performing these activities, such as turning his neck, using his hands, or moving his arms or legs.
26. The Full Commission finds that Dr. Perdue placed limitations on some aspects of Plaintiff's ability to work, but that he testified that Plaintiff was capable of returning to work as a welder as of April 7, 2010. Welding is the primary field of employment in which Plaintiff has engaged during and prior to his employment with Defendant-Employer.
27. The Full Commission finds that Plaintiff has not produced sufficient evidence of any reasonable but failed job search; or evidence that looking for work would be futile due to his work-related or other medical conditions; or that he has returned to work earning less wages than at the time of his employment. Therefore, the Full Commission finds that Plaintiff has not met his burden of proving entitlement to ongoing total or partial disability benefits.
28. The Full Commission finds, and the greater weight of the evidence of record establishes, that Plaintiff was capable of earning wages in the same or some other employment beginning on April 7, 2010 and continuing to the present. *Page 11 
29. The Full Commission finds, and the greater weight of the evidence of record establishes, that Plaintiff reached MMI for his work-related injury on April 7, 2010. Plaintiff was assigned a twenty-five (25%) percent PPI rating to his right hand. As Plaintiff is not entitled to ongoing disability pursuant to N.C. Gen. Stat. §§ 97-29 or 97-30 after April 7, 2010, the Full Commission further finds that Plaintiff's most munificent remedy is payment of his permanent partial impairment rating pursuant to N.C. Gen. Stat. § 97-31.
30. The Full Commission finds that Defendants have continued to pay Plaintiff total disability benefits under N.C. Gen. Stat. § 97-29 since reaching MMI on April 7, 2010, and that Defendants are entitled to a credit against payment of Plaintiff's PPI for all disability benefits paid to Plaintiff since April 7, 2010.
31. This case was ordered to mediation by the Industrial Commission. Mediator Scott Taylor was selected by the parties and mediation was scheduled. The mediation was cancelled one time because Plaintiff did not show up at the appointed date and time for the mediation. The mediation was rescheduled. Just prior to the new date, Plaintiff fired his first lawyer, and the second mediation was cancelled. Defendants were ready to proceed with mediation and had no part in causing either cancellation. The mediator, Scott Taylor, subsequently assessed appropriate cancellation and administration fees. Pursuant to Commission Rules, the Defendants paid both parties' share of the cancellation fee, but subsequently made a Motion requesting that Plaintiff be responsible for the entire amount of the cancellation and administrative fees.
32. The Full Commission finds that it is appropriate for Plaintiff to bear the cost of such cancellation and administration fees. Defendants are entitled to repayment of the cancellation and administrative fees charged by mediator Scott Taylor, and Defendants may take *Page 12 
a credit against payment of Plaintiff's PPI rating pursuant to this Opinion and Award in order to recoup those costs.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to establish that his alleged medical conditions other than his compensable right wrist injury, including but not limited to pain and limitations in his neck, shoulders, arms and elbows, chest, low back, legs, and ankles, are causally related to his compensable accident on March 30, 2009, and Plaintiff is not entitled to any past or future medical or other treatment for these conditions. N.C. Gen. Stat. § 97-25 (2009); Parsons v. ThePantry, 126 N.C. App. 540, 485 S.E.2d 867 (1997); Click v.Pilot Freight Carriers, Inc.,41 N.C. App. 458, 255 S.E.2d 192 (1979).
2. Plaintiff was capable of earning wages in the same or other employment beginning on April 7, 2010 and continuing to the present. Plaintiff has not been disabled because of injury since April 7, 2010. N.C. Gen. Stat. §§ 97-2(9), 97-29, 97-30 (2009);Sims v. Charmes/Arby's Roast Beef,142 N.C. App. 154, 159, 542 S.E.2d 277, 281 (2001); Russell v.Lowes Prod. Distrib.,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
3. Plaintiff reached maximum medical improvement (MMI) for his work-related injury on April 7, 2010. Plaintiff is entitled to a twenty-five (25%) percent permanent partial impairment (PPI) rating to his right hand. Plaintiff's most munificent remedy is payment of his PPI rating. As Defendants have continued to pay Plaintiff total disability benefits under N.C. Gen. Stat. § 97-29 since he reached MMI on April 7, 2010, Defendants are entitled to a credit *Page 13 
against payment of Plaintiff's PPI for all disability benefits paid to Plaintiff since April 7, 2010. N.C. Gen. Stat. § 97-31 (2009); Whitley v. Columbia Lumber Mfg.Co., 318 N.C. 89, 348 S.E.2d 336 (1986); Collins v. SpeedwayMotor Sports Corp., 165 N.C. App. 113, 598 S.E.2d 185 (2004).
4. Plaintiff is responsible for payment of all related cancellation and administrative fees to the mediator Scott Taylor. Defendants are entitled to subtract the full amount of all cancellation and administrative fees paid to mediator Scott Taylor from the payment of Plaintiff's remaining PPI entitlement, if any, set forth above. Rule 7(c), Rules for Mediated Settlement and Neutral Evaluation Conferences of the North Carolina Industrial Commission (Effective June 1, 2000).
5. A reasonable attorney fees in the amount of 25% of the compensation due Plaintiff is approved for Plaintiff's counsel, to be paid directly to Plaintiff's counsel from Plaintiff's award.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff is not entitled to any further medical treatment or other benefits related to body parts other than his compensable right wrist injury, including but not limited to his neck, shoulders, arms and elbows, chest, low back, legs, and ankles.
2. Defendants may terminate payment of disability benefits to Plaintiff effective April 7, 2010. Defendants are entitled to a credit for all disability benefits paid to Plaintiff since April 7, 2010. *Page 14 
3. Plaintiff is awarded a twenty-five percent (25%) permanent partial impairment rating to his right hand, subject to Defendants' credit for all disability benefits paid to Plaintiff since Plaintiff reached maximum medical improvement on April 7, 2010.
4. Defendants are entitled to repayment from Plaintiff for the full cost of the mediation cancellation, administrative, or other fees charged by mediator Scott Taylor in this case. Defendants may take a credit against payment of Plaintiff's twenty five percent (25%) permanent partial impairment rating to satisfy this right to reimbursement.
5. Plaintiff's counsel is awarded 25% of the compensation due Plaintiff and shall be paid directly to Plaintiff's counsel.
6. Each side shall bear its costs.
This the ___ day of June 2011.
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1